**HILTI, INC., Defendant, Appellant,**

v.

**John OLDACH, Plaintiff, Appellee.**

**No. 6998.**

United States Court of Appeals
First Circuit.

Heard Feb. 8, 1968.

Decided March 28, 1968.

Samuel S. Cross, Stamford, Conn., with whom John N. Cole, Stamford, Conn., Robert A. Gerlin, New York City, Anthony E. Krug, Stamford, Conn., and John F. Malley, Old San Juan, P. R., were on brief, for appellant.

Benjamin Rodriguez Ramon, San Juan, P. R., with whom Rafael Rodriguez Ema, Rodolfo Sequeira, Nicholas Jimenez, San Juan, P. R., and Joseph L. Martinez, Caparra Terrace, P. R., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This appeal is from an order of the district court denying the corporate defendant's motion to stay proceedings, pending resolution by arbitration, as to four of eight causes of action in a suit brought against it and two individuals.[1] The court, "assuming but not judicially resolving" the continued force of a written contract and arbitration clause entered into by plaintiff and Hilti, Inc., on September 5, 1958, gave as its reasons for denial (1) that one of the defendants, Everett Johnson, is not a party to the arbitration agreement;[2] (2) that the movant has delayed its demand for arbitration for nearly two years and has thereby not proceeded with due diligence; and (3) that the movant answered the complaint on the merits, elected to litigate rather than arbitrate and accordingly has waived any rights it may have had to arbitrate.

1. Appellee has filed a motion to dismiss for lack of appellate jurisdiction, contending that the order is not such an interlocutory order granting an injunction as is appealable under 28 U.S.C. § 1292 (a) (1). We are satisfied, however, as a matter of law if not of logic, that where, as here, the causes of action for which stay was sought are traditional common law actions seeking money damages and the purpose of the stay is the prior determination of an equitable defense such as an arbitration agreement, the order denying stay is appealable. Shanferoke Coal & Supply Corp. of Delaware v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935); Standard Chlorine of Del., Inc. v. Leonard, 384 F.2d 304 (2d Cir. 1967). Cf. Baltimore Contrs., Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955).

2. Appellee did not—wisely, we think—attempt to support this basis for decision in brief or argument. If arbitration defenses could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised.

The relevant facts are as follows. Defendant-appellant Hilti, Inc.,[3] a New York corporation whose principal place of business is in Stamford, Connecticut, manufactures and distributes a patented power drive tool used in building construction. It markets its product through some one hundred and fifty sales representatives. Hilti and plaintiff-appellee John Oldach entered into a written agreement on September 5, 1958 providing for Oldach's service as Hilti's sales representative in Puerto Rico and other areas. The right to terminate at any time upon sixty days notice was reserved to each party and any controversy or claim arising out of or relating to the agreement or its breach was to be settled by arbitration in Stamford, Connecticut under the laws of Connecticut and in accordance with the governing rules of the American Arbitration Association.

On October 29, 1965, some five weeks, after Hilti opened a branch sales office in Puerto Rico, managed by defendant Johnson, a former employee of appellee, Oldach brought suit against Hilti, its President, its Vice-President and Johnson, variously charging some or all of them with Sherman and Clayton Act violations, conspiracy to defraud, fraud, termination of the franchise and dealership without proper and just cause, and failure to satisfy commissions and bonuses due and owing.

On December 30, 1965 Hilti moved to dismiss the whole complaint, assigning the arbitration clause as the ground for dismissing the two causes related to termination of franchise and non-payment of commissions. This motion was denied on April 7. Meanwhile, defendants' time to answer was extended by stipulation and an answer on the merits was filed January 10, 1966, including as a special defense the claim that the third through sixth causes of action were arbitrable under the September 5, 1958 contract.[4] Plaintiff, as the result of a procedural default by defendant, insisted on being given priority in discovery proceedings. The path proved rocky. Originally limited to ninety days, he concluded his interrogatories—some 310 separate questions in four sets—over nine months after suit was brought. Objections to interrogatories and to answers, affidavits, requests for extension, and motions for summary judgment by both sides filled the interim. On September 2, 1966, defendant began its interrogatories, which encompassed 209 questions in two sets. Almost eight months later, on April 27, 1967, defendant moved for a stay of further proceedings as to the four causes of action.

During the course of these events defendant had invoked the arbitration agreement in the following ways. In its initial motion to dismiss, it had, as we have noted, made reference to the franchise and commissions causes. In its answer it included as subject to the arbitration defense, in addition to these two causes, conspiracy to defraud and fraud. In its subsequent motion for summary judgment, it invoked the arbitration defense only as to conspiracy to defraud.

On this record the district court found both that defendant had waived its rights to arbitration because it had answered the complaint on the merits and "entered into litigation", and that defendant had "delayed nearly two years to demand arbitration" and thus had not proceeded with diligence.[5] Assuming, as did the court, the continuing

---

3. Singular references throughout this opinion to "defendant" are to Hilti, Inc.

4. These related to the charges of conspiracy to defraud, fraud, termination of franchise, and non-payment of commissions and bonuses. The remaining causes were those charging principally monopoly and conspiracy in restraint of trade.

5. "§ 3 Stay of proceedings where issue therein referable to arbitration

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in

validity of the arbitration clause in the September 5, 1958 contract, we do not think that the evidence of inconsistent action or delay is strong enough to justify findings of waiver or default in the light of the vigorous policy favoring arbitration. Galt v. Libbey-Owens-Ford Glass Co., 376 F.2d 711, 714 (7th Cir. 1967); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 410 (2d Cir. 1959), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, dismissed under Rule 60, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed 2d 37 (1960).[6]

An understanding of the same background is, in this case, relevant to both reasons assigned by the district court since the actions which caused it to find that defendant had affirmatively waived its rights to arbitration were also the causes of the delay which occurred before it moved for a stay. If such actions were reasonable under the circumstances, any consequent delay cannot amount to default.

■ We start with the fact that defendant's answer, in its special defense, served notice on plaintiff of the arbitration defense. Given this, the burden is heavy on one who would prove waiver. Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra; Almacenes Fernandez, S. A. v. Golodetz, 148 F.2d 625 (2d Cir. 1945). Nor did defendant here irrevocably lock litigious horns by filing a counterclaim, as in American Locomotive Co. v. Chemical Research Corp., 171 F.2d 115 (6th Cir. 1948), cert. denied, 336 U.S. 909, 69 S.Ct. 515, 93 L.Ed. 1074 (1949) or Radiator Specialty Co. v. Cannon Mills, Inc., 97 F.2d 318 (4th Cir. 1938).

It had, however, two large size problems. To begin with, it was put on notice that plaintiff was challenging the continued existence of the contract containing the arbitration clause. On January 7, 1966, plaintiff's attorney filed an affidavit averring that the contract of September 5, 1958 was never relied upon by the parties and that it was "abandoned almost immediately". A month later another affidavit stated that the contract was "abandoned * * * at its very inception [and] has been and is a nullity * * *." Four months later the plaintiff swore that the contract was "mutually abandoned at its inception". We now have the recent guidance from the Supreme Court that " * * * a federal court may consider only issues relating to the making and performance of the agreement to arbitrate", Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). Arguably this might imply that a court ought not to attempt in the first instance to resolve the question whether a contract which once existed has since been abandoned. But we cannot say, pre-*Prima*, that this kind of attack on the continued existence of an agreement was not reasonably to be considered as posing an issue for the court. See Tepper Realty Co. v. Mosaic Tile Co., 259 F.Supp. 688 (S.D.N.Y.1966). Thus, discovery addressed to this issue could not be said to be inconsistent with continued assertion of the right to arbitration. In fact, both sets of defendant's interrogatories sought details on the times and circumstances of the alleged abandonment.

The second problem defendant faced was the wide-ranging scope of plaintiff's interrogatories, seeking data germane to all causes of action. While defendant did seek to limit the questions, and was par-

accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

6. There is no question but that the contract, involving as it does dealer representation of goods manufactured in Connecticut by a New York corporation and to be sold in Puerto Rico, clearly evi-

dences "a transaction involving commerce", 9 U.S.C. § 2; see Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Accordingly, the Federal Arbitration Act, 9 U.S.C. §§ 1–14, and not Puerto Rico or Connecticut law, necessarily controls the disposition of appellant's motion. Prima Paint, id. at 404–405, 87 S.Ct. 1801.

tially successful in doing so, plaintiff was still probing on a wide front. Defendant, in framing its own interrogatories, had no assurance that the court would find that the 1958 contract still existed. Moreover, in preparing a defense to the monopoly and restraint-of-trade causes of action, which were not claimed to be subject to arbitration, much the same ground as to actual damages and conduct had to be covered as would be relevant in a trial on the merits of the causes claimed to be arbitrable. That defendant, under these circumstances, cast a wide net cannot be equated with waiver of arbitration.[7]

The expeditious way to have disposed of the arbitration issue would have been for plaintiff to move to strike the special defense of arbitration from the answer. This not having been done, a certain amount of continued jousting was inevitable.

This analysis of the tactical situation faced by defendant goes far to dispose of the contention that delay in seeking a stay constituted default. While the district court referred to "nearly two years" of delay, the fact is that the delay preceding the motion to stay was shared almost equally between plaintiff and defendant.[8] If our analysis is correct, that defendant had legitimate pre-arbitration discovery purposes to pursue, such delay as it occasioned is no basis, in the light of the decided cases in this area, for a finding of default.[9]

■ The questions of waiver and default aside, appellee argues that the arbitration agreement is inapplicable to Puerto Rican Act No. 75, 10 L.P.R.A. §§ 278–278(d) (Supp.1966), upon which the sixth cause of action is based, for the reason that the Puerto Rico statute, enacted some six years after the effective date of the contract, could not have been contemplated by the parties and hence falls outside the intended scope of the arbitration clause. The short answer is that the portion of the arbitration clause which reads "Any controversy or claim arising out of or relating to the breach thereof shall be

---

7. It should be noted that the two sets of interrogatories were the only discovery efforts of defendant. No interrogatories have been submitted to non-parties. There have been no depositions. Affidavits have related strictly to pre-trial motions. Cf. American Locomotive Co. v. Gyro Process Co., 185 F.2d 316 (6th Cir. 1950).

8. Of the eighteen months between the filing of suit and the motion for a stay, ten months had elapsed before defendant was allowed, under the stipulation, to commence discovery. While plaintiff may well complain that part of the delay was occasioned by defendant's reluctance to give detailed replies, so may defendant complain of plaintiff's non-responsiveness.

9. The cases demonstrate with marked consistency the reluctance of courts to find default despite substantial delay and intervening proceedings. Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, dismissed under Rule 60, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960) (9 month delay; interim settlement discussions; disputed goods tested; held: no default); Almacenes Fernandez, S.A. v. Golodetz, 148 F.2d 625 (2d Cir. 1945) (6 month delay; 7 third party defendants joined; held: no default); Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2d Cir. 1942) (9 month delay; answer amended two months before trial to assert right to arbitration; "no important intervening steps * * * taken"; held: no default); Lumbermens Mut. Cas. Co. v. Borden Co., 268 F.Supp. 303 (S.D.N.Y.1967) (motion for stay of proceedings delayed two years; no direct dispute between plaintiff and movant until some 21 months after suit initiated; answer never filed; discovery initiated by plaintiff; held: no default).

To be distinguished are cases where a defendant initially failed to assert his arbitration defense, asserted a counterclaim and only later sought arbitration, American Locomotive Co. v. Chemical Research Corp., supra; Barber & Ross Co. v. Cornell & Co., 242 F.Supp. 825 (D.D.C.1965), aff'd 123 U.S.App.D.C. 378, 360 F.2d 512 (D.C.Cir. 1966), or where a plaintiff sought to stay his own action pending arbitration, Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co., 128 F.2d 411 (7th Cir. 1942); The Belize, 25 F.Supp. 663 (S.D.N.Y.1938).

settled by arbitration * * * " cannot be construed so narrowly. Whether the alleged failure to renew plaintiff's dealership was for "just cause" necessarily turns on the nature of the relationship between the parties, created by mutual agreement and evidenced by the September 8, 1958 contract. It matters not that the statute sued on was yet to be enacted. The broad language of the arbitration clause forces us to conclude that the parties intended to arbitrate all disputes arising thereunder irrespective of whether they were foreseeable at the time of agreement. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., supra, 388 U.S. at 406, 87 S.Ct. 1801, and cases collected therein.

Finally, appellee argues that because it compels arbitration in Connecticut the arbitration agreement is contrary to the public policy of Puerto Rico, and hence invalid. We see no substance in this argument. First, the cases cited to us in support of it, Volkswagen Interamericana, S. A. v. Rohlsen, 360 F.2d 437 (1st Cir.), cert. denied, 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143 (1966) and La Electronica, Inc. v. Electric Storage Battery Co., 260 F.Supp. 915 (D.P.R.1966), are clearly inapposite for they involve contractual limitations of jurisdiction to maintain suit. The parties here are not preoccupied with a jurisdictional dispute. The district court in Puerto Rico long ago asserted jurisdiction over the subject matter in this case and is now asked simply to stay its proceedings pending arbitration. See generally 6A Corbin, Contracts § 1432 (1962) and footnote 69. Second, the assertion that arbitration proceedings cannot be held outside Puerto Rico conflicts with section 3 of the Federal Arbitration Act which speaks of arbitration "in accordance with the terms of the agreement". Third, the parties have chosen Connecticut law to control the arbitration process and it is not apparent to us, given Puerto Rico's own stated interest in encouraging the arbitration of disputes, 32 L.P.R.A. §§ 3201–29 (1956), that such a designation offends fundamental Commonwealth policy.

Restatement (Second) of Conflict of Laws §§ 354h, 332a (Tent. Draft No. 6, 1960). In so saying we do not suggest the extent, if any, that such policy could countermand the Federal Arbitration Act, or venue provisions agreed to by the parties.

Reversed and remanded for further proceedings not inconsistent with this opinion.