**SEA–LAND SERVICE, INC., Plaintiff,**

v.

**SEA–LAND OF PUERTO RICO, INC., Defendant.**

**Civ. No. 85–2048CC.**

United States District Court, D. Puerto Rico.

May 27, 1986.

Nicolás Jiménez, Jiménez, Graffam & Lausell, San Juan, P.R., for plaintiff.

Fernando Castro, and Arturo Trias, Trias, Doval, Muñoz, Acevedo & Otero, San Juan, P.R., for defendant.

## OPINION AND ORDER

CEREZÓ, District Judge.

This is a diversity action for declaratory and injunctive relief filed on September 30, 1985 by Sea-Land Service, Inc., a Delaware corporation engaged in the business of ocean transportation of goods, and defendant Sea-Land of Puerto Rico, Inc., a Puerto Rican corporation which was mainly engaged in the solicitation of freight on behalf of plaintiff. In essence, plaintiff seeks a declaration that the Sales Agreement with defendant is not subject to Puerto Rico's Dealers Law, *P.R. Laws Ann.*, title 10 section 278, *et seq.* (Law 75), that the agreement be declared resolved and an accounting made, and that defendant be enjoined from seeking any further duty or right under the agreement. It also requested an order compelling arbitration, pursuant to the agreement's arbitration clause and that termination be found to be with just cause, if it were determined that

the Dealer's Law is applicable. Defendant's response consisted mainly in asserting rights under the Dealer's Act and claiming that plaintiff had terminated a dealership in violation of that law, that the termination was a breach of contract actionable under the general provisions of the Civil Code, and that plaintiff tortiously interfered with defendant's communications facilities and business.[1] Plaintiff sought a temporary restraining order to enjoin defendant from any further solicitation efforts on its behalf. This provisional remedy was denied on September 30, 1985. On October 9, 1985 defendant filed a motion for the temporary pendente lite relief provided by Article 3A of the Dealer's Act and for a temporary restraining order. On November 13, 1985 the Court denied the request for a temporary restraining order and set for a hearing on February 18, 1986 the request for the Article 3A relief. The parties were to exchange documentary evidence and file simultaneous briefs. During a conference held on February 10, 1986 the attorneys for defendant informed that it was withdrawing the request for a pendente lite Article 3A injunction. The Court and the parties agreed that the request for arbitration would be considered before ruling on any dispositive pretrial motions.

With its petition for declaratory judgment, plaintiff filed a Motion Requesting Order Compelling Arbitration seeking stay of this action and arbitration pursuant to clause 16 of the Sales Agreement. It is argued that the agreement is a contract involving commerce and that arbitration clauses in contracts of this type should be enforced according to the Federal Arbitration Act. Defendant's position on the arbitration issue is stated in the memoranda of law in support of the temporary restraining order and of the preliminary injunction petitions and in its reply to plaintiff's supplemental memorandum. Defendant does not dispute that the contract affects commerce, within the meaning of the Federal Arbitration Act. It has not raised any specific issue of fact which would preclude resolving the arbitration issue without a hearing nor has it requested a hearing.[2] Its challenge to arbitration is twofold. It questions plaintiff's right to seek enforcement of the arbitration clause claiming that, by filing the instant action and canceling the agreement without first initiating arbitration, it waived any rights under the clause. Alternatively, it argues that the arbitration clause cannot be construed to include as arbitrable several of the claims because the language in the clause limits arbitration to disputes arising from *breaches* of the contract or its essential obligations. It contends that neither the issues of whether defendant is a "dealer" or whether the termination of the agreement violated the Dealer's Law nor the tort claim of interference with defendant's telephone communications can be submitted to arbitration for they are "clearly outside the realm of any breach of contract" question. Defendant's position, noticeably devoid of citations, is not supported by federal law.

The Federal Arbitration Act, 9 U.S.C. Section 1, *et seq.*, applicable to the contract involved in this case, makes a written agreement to arbitrate "valid, irrevocable and enforceable, save for such grounds as exist at law or in equity for the revocation of contract." *Id.*, at section 2. The Supreme Court has admonished that, since the Act evinces Congress' concern in enforcing private contractual arrangements

---

**1.** It should be noted that plaintiff has not answered the counterclaim.

**2.** Plaintiff initially requested a "speedy hearing" in its prayer for relief in the petition for declaratory judgment, pursuant to the Federal Arbitration Act and Rules 57 and 65, Federal Rules of Civil Procedure. However, it did not request such hearing on its motion for arbitration nor has it renewed this request in its later representations to the court, or stated the need for a hearing. We assume plaintiff's reference to a hearing in its prayer to be related to its provisional remedy request. In any event, considering both parties' positions on this matter we conclude that no facts relevant to this issue are disputed and deem the hearing provided by the Federal Arbitration Act unnecessary. *See International Union of Operating Engineers, Local Union No. 139 v. Carl A. Morse, Inc.,* 529 F.2d 574, 581 (7th Cir.1976).

to arbitrate, federal courts should "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). So strong is the federal policy favoring arbitration[3] of private contractual disputes so stipulated, that the Court has interpreted the Federal Arbitration Act to preempt contrary state law since the Act "withdrew the power of the States to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). Even with respect to the law here in question, the Puerto Rico Dealer's Law, the Supreme Court in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* —— U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), affirmed the First Circuit's ruling that the issues arising from the application of this special Puerto Rican law to the contract in question were arbitrable, notwithstanding the anti-arbitration provision of Law 75 and the absence of any specific reference to this law in the language of the arbitration clause. It is clear from these rulings that Law 75 provisions which rendered null and void "[a]ny stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico or under foreign law or rule of law," *P.R. Laws Ann.,* title 10 section 278b–2, is preempted by the Federal Arbitration Act. *See Mitsubishi,* 105 S.Ct. at 3351, n.8. Yet, more important to this case is the fact that in *Mitsubishi* the contention that Law 75 issues were beyond the scope of arbitration was also based on a restrictive interpretation of the language used in the arbitration clause as excluding all issues involving special laws not specifically included in the clause. In rejecting this strict, hermeneutic approach towards non-arbitration, the Court, citing from *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), reiterated

the guiding principles of arbitration clause enforcement stating:

'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'

[citations] ... as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.

*Mitsubishi,* 105 S.Ct. at 3354.

■ The arbitration clause here in question provides:

16. *Arbitration*

Any differences and disputes concerning the breach of essential obligations arising out of this Agreement shall be referred to the arbitration of a single arbitrator, if Carrier and Contractor shall agree upon one, or to the arbitration of two arbitrators, one each to be appointed by the Carrier and Contractor, and an Umpire to be appointed by the arbitrators so named. Such arbitration shall be subject to the provisions of the Rules of Arbitration of the International Chamber of Commerce as amended, and shall take place in Miami, Florida, U.S.A.

Defendant's attempt to distinguish this clause from the one in *Mitsubishi* because there the clause referred to "disputes, controversies or differences which may arise ... out of or in relation to Articles I–B through V ... or for breach thereof," whereas here the clause only mentions "differences and disputes concerning the breach of essential obligations arising out of this Agreement" represents a strained interpretation and a sophistical argument. Its conclusion that clause 16 limits arbitra-

---

**3.** In *Dean Witter,* the Court mentioned that the Act was designed to overcome traditional judicial hostility to arbitration agreements, an ana-chronism borrowed from English common law. *Id.* 105 S.Ct. at 1241–43.

tion only to breaches of contract is contrary to the clause's literal terms which refers to the arbitrator any differences or disputes regarding the breach of the "essential obligations arising out" of the Agreement. It is clear from this language that it is not necessary for the parties to breach the entire contract. It is also clear that the use of the word breach does not constitute the sine qua non prerequisite to arbitration that defendant claims for this is precisely what the arbitrator is called upon to determine: whether the dispute or difference on an essential obligation is or is not a breach of the agreement. Defendant's interpretation would nullify the arbitration clause for the dispute would have to be defined, possibly by judicial declaration, as a breach of contract before submitting it to the arbitrator. Not even regular principles of contract interpretation support this position. See *P.R.Laws Ann.*, title 31 sections 3471–3479.

Its argument that Law 75 issues cannot be submitted to arbitration because they are unrelated to the agreement is equally unsound. It appears to be a clever reconstruction of the argument advanced by the Puerto Rican automobile dealer that

was rejected by the federal appellate courts in *Mitsubishi*. A reading of defendant's counterclaim and of its Law 75 defenses reveals that its position on non-arbitration of these claims is self-defeating. The affirmative defenses mention the sales agreement as "speaking for itself" and as having been breached by its unilateral termination in violation of Law 75. Twenty-one paragraphs of the twenty-five paragraph counterclaim which assert the rights provided by the Dealer's Law all refer in one way or another to the sales agreement. There are more than thirteen references to the sales agreement and specific provisions thereof in the first eleven pages of defendant's memorandum of October 9, 1985 where it argues for the application of Law 75. It is impossible to reconcile defendant's position in this case with its contention that Law 75 issues are not differences or disputes regarding breaches of the essential obligations arising out of the agreement. As defendant's own pleadings well establish it is precisely on this sales agreement that the parties' relationship rests and it is on this relationship that defendant bases its argument that it is a dealer within the meaning of the law [4] and that the relation-

---

[4] Defendant mentions, in passing, that the issue of whether it is a Law 75 dealer, assuming it had no authority to "close" the freight solicitation contracts, should be certified to the Supreme Court of Puerto Rico. The only reason advanced to invoke this special procedure is because defendant believes that court will render an opinion distinguishing its prior decisions regarding the requirement of promoting and closing sales or service contracts that it determined was necessary in order to be considered a Law 75 dealer. Defendant points to Spanish commentator Garrigues' opinion in his treatise on Spanish commercial law regarding the agency relationship. It argues that given that opinion, the Supreme Court of Puerto Rico will probably clarify its prior decisions and issue a decision favorable to it, including defendant within the scope of said definition.

Undoubtedly, the Supreme Court of Puerto Rico will continue to interpret Law 75, as will be its duty whenever such issues are properly before it, and these interpretations will most likely expand, clarify and even distinguish prior opinions. This District Court will also interpret and apply said law, but according to the Supreme Court of Puerto Rico's existing rulings on this matter. It is not proper for us to speculate on

what the law in Puerto Rico should be and render opinions modifying existing law. The definition of what constitutes a Law 75 dealer has been given by the Supreme Court of Puerto Rico. It cited *selected portions* of Garrigues. This federal court has carefully scrutinized these opinions in order to construe a working formula for the many Law 75 cases filed or removed. These published opinions, which defendant has not cited, speak for themselves and clearly indicate what the current state of the law in Puerto Rico on this matter is. Defendant's expectations of how the Supreme Court of Puerto Rico will modify existing law in order to rule favorably in its case is insufficient to warrant the special procedure of certification which on the grounds asserted, would amount to a request for an advisory opinion from that court. *See Pan Ame. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780 (1982). In addition, if defendant is insinuating that no federal court or federal court imposed arbitration can rule on this local law issue because only the Supreme Court of Puerto Rico can grasp the mysteries of Garrigues, we refer defendant to the Supreme Court's decision in *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) regarding the preemptive force of the Federal

ship was terminated in violation of Law 75. Defendant has not pointed to any other agreement, not arising from the essential obligations of the sales agreement, that would establish some sort of additional and independent arrangement, with its own portfolio of rights and duties, on which the Law 75 issues would be based and thus, excluded from the sales agreement arbitration clause. In short, the record shows that defendant's Law 75 contentions are based on the sales agreement and the obligations arising therefrom. The essential obligation derived from that agreement was to make arrangements for the transportation of freight. Whether or not this "arrangement" encompasses a series of faculties and powers which, as defendant alleges, would place it within the scope of a Law 75 dealer is an arbitrable difference or dispute on an essential aspect of the contract. There is no reason why this difference should not be resolved by arbitration. The fact that the arbitrator will have to examine the relationship through the prism of the Dealer's Law to determine if the rights provided by it are applicable to the relationship established by the agreement does not make the arbitration clause unenforceable or inapplicable to the Law 75 claim. To exclude it would mean to disregard the *Mitsubishi* ruling for we would have to limit the scope of arbitration to contractual issues that do not require the application of special laws unless the special law was specifically mentioned in the arbitration clause. Such negative presumption was expressly rejected by the

Supreme Court in *Mitsubishi* which directed the inquiry on the arbitrability of a special law on whether the Congressional interest behind that law was reconciliable with the interests promoted by the Federal Arbitration Act, 105 S.Ct. at 3353–3355.[5] There is no reason in law or fact to separate the Law 75 claims from the scope of arbitration.

With respect to the claim of tortious interference with defendant's communications center, it should initially be noted that the First Circuit has rejected the labeling of controversies arising out of or related to the contract subject to arbitration so as to exclude them from the scope of arbitration. *Acevedo Maldonado v. PPG Industries, Inc.,* 514 F.2d 614, 616 (1st Cir. 1975). A party may not avoid arbitration by splitting its action as one based on contract and one based on negligence and then claim arbitration was not applicable to the negligence portion of the claim. *Tac Travel America Corp. v. World Airways, Inc.,* 443 F.Supp. 825, 828 (S.D.N.Y.1978); *Tepper Realty Company v. Mosaic Tile Co.,* 259 F.Supp. 688, 693 (S.D.N.Y.1966). The Federal Arbitration Act must be implemented in a way so as to make arbitration effective instead of erecting technical barriers to preclude arbitration. *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1068 (2d Cir.1972). We have before us a very broad arbitration clause which submits to arbitration any disputes or differences regarding the breach of essential

---

Arbitration Act on contrary local legislation and to our discussion in *Mario R. Franceschini, Inc. v. Riley Co.,* 591 F.Supp. 414, 419 (D.P.R. 1984), where we considered that a wholesale adoption of attributes of a commercial agency to a Law 75 Dealer could be ill suited to the unique relationship created by the Dealer's Law of Puerto Rico.

**5.** As explained by the Court in *Mitsubishi:*
Soler's concern for statutorily protected classes provides no reason to color the lens through which the arbitration clause is read. By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum. It trades the procedures and

opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration. We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history. ... Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. Nothing, in the meantime, prevents a party from excluding statutory claims from the scope of an agreement to arbitrate. [Citations omitted.] *Id.*

obligations arising out of the agreement. The brief allegations in the complaint and the limited discussion in the memorandum as to this tortious interference claim are limited to conclusory statements to the effect that plaintiff interfered "tortiously" and "fraudulently" with defendant's communication facilities and business. The sworn statement of defendant's General Sales Manager does not add much to this. It is only in defendant's Reply to Opposition to Motion for Temporary Restraining Order and Injunction Pendente Lite, filed October 15, 1986, that we finally get a glimpse of this claim. In this motion, defendant mentions that "[e]ssential telephone communications which [defendant] had leased for its daily operations from [plaintiff] were intentionally cut off by [plaintiff] without prior warning in an abusive and negligent manner." Setting aside the "abusive" and "negligent" labels, it appears that the "tortious interference with communications" claim consists of plaintiff's disconnecting the telephone communication facilities without prior notice. Without intimating whether this act constitutes tortious conduct or not, we note that the sales agreement required as part of defendant's duties that it maintain and operate local telephone communication facilities as may have been reasonably required to perform the work. Overseas communication facilities, however, were to be maintained and operated by plaintiff. Exhibit A, Sales Agreement, Section 3.12. Inasmuch as defendant has not shown that the communication facilities which it leased from plaintiff, and which were apparently required to fulfill the obligations encompassed in the Sales Agreement were part of a separate, unrelated agreement, the act of cutting-off the communication facilities may be but an incidental consequence of the decision to terminate the entire arrangement which defendant has challenged as a breach of the contractual relationship and which will be examined in the arbitration proceedings. The disconnection of the telephone facilities is a matter that would have to be examined by the arbitrator as part of the acts done by plaintiff in unjustifiedly terminating the contract, as alleged. Rather than asserting a separate, actionable tort, the tortious interference appears to be directly related to the parties' contractual rights and duties, as derived from the sales agreement. Classifying this conduct conclusorily as a tort to divorce it from the obligations arising from the agreement which are subject to arbitration is not enough to exclude it from the scope of arbitration, unless defendant established that the arrangement for the use of the communication facilities derived from a separate independent, non-arbitrable agreement or if it showed with sufficient factual allegations that the disconnection occurred in such a manner as to constitute grounds for an independent, actionable tort and not merely the tortious performance of contractual obligations. *Cf. Fuller v. Guthrie*, 565 F.2d 259 (2d Cir.1977) (performer's derogatory remarks of promoter during concert were not arbitrable). As the record stands, none of these alternatives have been shown to exist. Excluding arbitration of these issues on this weak showing would be a disservice to the purposes of the Arbitration Act. The only argument that could be advanced, although not raised by defendant, is that, since the communications aspect of the relationship was but a minor part of the obligations arising from the agreement, it is not an "essential" obligation and, thus, not arbitrable. However, given the magnitude of the dispute or difference regarding this aspect of the relationship—total disconnection—the contemporaneity of the act of disconnection with the principal arbitrable issue—the termination or cancelation of the agreement—and defendant's failure to raise this in a way that would enable us to determine that this is indeed a minor obligation of the agreement, we also resolve any doubts on whether this issue is arbitrable in favor of arbitration. *Mitsubishi*, 105 S.Ct. at 3354.

Finally, defendant's contention that plaintiff waived the right to seek arbitration by filing this action has no support in the record or the applicable law. Waiver of arbitration is not lightly inferred. *Id.*

*Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 641 (7th Cir.1981); *Hart v. Orion Insurance Co.,* 453 F.2d 1358, 1360–61 (10th Cir.1971); *Hilti, Inc. v. Oldach,* 392 F.2d 368, 371 (1st Cir.1968); *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2nd Cir.1968). Although an arbitration clause may be waived through a contracting party's inconsistent acts, the mere filing of a judicial action or a responsive pleading therein is insufficient to constitute a waiver of such right. *Hilti,* 392 F.2d at 372 n.9 *and ATSA of California, Inc. v. Continental Ins. Co.,* 702 F.2d 172, 175 (9th Cir.1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos,* 553 F.2d 842, 845 (2d Cir.1977); *Virginia Squires,* 468 F.2d 1064 at 1068; *Nuclear Installation Services Co. v. Nuclear Services Corp.,* 468 F.Supp. 1187, 1194 (D.Pa.1979). Alleged breach of the contract or repudiation by the party requesting arbitration is also insufficient to be considered a waiver of the arbitration clause. *Southwest Indus. Import & Export v. Wilmod Co., Inc.,* 524 F.2d 468, 470 (5th Cir.1975). Courts have repeatedly held that, if a request for stay of the proceedings pending arbitration is filed simultaneously or promptly thereafter with the filing of a judicial action or responsive pleading therein, arbitration is not waived. *See e.g. Gavlik Const. Co. v. H.F. Campbell Co.,* 526 F.2d 777, 783–84 (3rd Cir.1975). Absent some type of prejudice caused by the judicial action, such as lost evidence, duplication of efforts, etc., courts will not consider the filing to be a waiver. *See e.g. N & D Fashions, Inc. v. DHJ Industries, Inc.,* 548 F.2d 722, 728 (8th Cir.1976). This prejudice must be shown by the party asserting waiver. When placed on notice of arbitration, this party bears the burden of establishing that arbitration was waived. *See Martin Marietta Aluminum, Inc. v. General Elec. Co.,* 586 F.2d 143, 146 (9th Cir.1978); *Southwest Indus. Import & Export v. Wilmod Co., Inc.,* 524 F.2d 468, 470 (5th Cir.1975); *Hilti,*

392 F.2d at 371. In this case, defendant's contention that arbitration was waived has only been supported by reference to plaintiff's commencement of this action and simultaneous termination of the agreement. However, defendant has failed to show how it has been prejudiced by this in terms of the arbitration issue. This is not a situation where a party initiates judicial proceedings without mentioning or referring to arbitration or where it engages in active litigation for a considerable length of time and then surprisingly dusts-off a hidden arbitration clause to thwart the other parties' litigation efforts.[6] On the contrary, the record shows that plaintiff's action is a petition for declaratory relief, part of which seeks a declaration that the controversies related to the termination are arbitrable. The litigation has only been pending for a few months and no evidentiary hearing nor extensive discovery has been conducted. In addition, from the outset plaintiff notified its preference to arbitrate the action by its motion seeking an order to compel arbitration filed simultaneously with its complaint. Under these circumstances plaintiff's acts cannot be deemed a waiver of the arbitration clause.

Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law. *See* 9 U.S.C. sections 9–12; *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.,* 274 F.2d 805, 808 (2nd Cir.), *cert.*

---

**6.** The only prejudice one could surmise, giving defendant the full benefit of the doubt, would be if it had been pursuing an Article 3A Law 75 remedy and the issue of the arbitration clause could have in some way curtailed obtaining a speedy provisional remedy. However, defendant's abandonment of that remedy relegates this possibility to the realm of the hypothetical.

denied, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960). This course of action will also make the arbitrability issue immediately appealable, *see Hartford Financial Systems v. Fla. Software Serv.,* 712 F.2d 724, 728–29 (1st Cir.1983), and will avoid the litigation expenses and delay if the arbitration conducted were vacated by a later appeal. Since there are no live controversies before this court, the appropriate procedure is dismissal of the action, without prejudice. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 13, 103 S.Ct. 927, 933, 935, 74 L.Ed.2d 765 (1983); *County of Durham v. Richards & Associates, Inc.,* 742 F.2d 811, 813, 14 (4th Cir.1984). This decision does not preclude the parties' right to seek judicial review or enforcement of the arbitration award in the appropriate court,[7] should they deem it necessary.

Accordingly, the court RULES as follows. Plaintiff's Motion Requesting Order Compelling Arbitration filed September 30, 1986 and that part of the Petition for Declaratory Relief requesting a declaration that its dispute with defendant regarding the termination of the sales agreement is arbitrable is hereby GRANTED. The Court hereby DECLARES that all issues, claims and defenses raised in this action are subject to arbitration, pursuant to Clause 16 of the Sales Agreement between the parties. The court hereby ORDERS the parties to submit to arbitration, pursuant to Clause 16 of the Sales Agreement, all disputes and differences arising from the termination of said agreement, including all claims, defenses and issues raised in this proceeding as either breach of contract claims or Puerto Rico Dealer's Act issues and defenses and all claims and defenses related to the tortious interference with defendant's telephone communications claim. The rest of the claims raised in the petition for declaratory judgment and the counterclaim in its entirety are hereby DIS-

MISSED, without prejudice. Judgment shall be entered accordingly.

SO ORDERED.

---

**7.** The parties have not discussed the anomaly of having to arbitrate in Florida and filing this action in this federal court.