Eugenio **RODRIGUEZ FONT**, Eugenio
Rodriguez Rolenson, and Ana T.
Rolenson de Rodriguez, Plaintiffs,

v.

**PAINE WEBBER INCORPORATED**, as
successor to Paine Webber Jackson &
Curtis, Inc., and Milton Cofresi, De-
fendants.

Civ. No. 83–1461 (JAF).

United States District Court,
D. Puerto Rico.

Nov. 21, 1986.

Benny Frankie Cerezo, San Juan, P.R.,
Melvin A. Brosterman, Stroock, Stroock &
Lavan, New York City, for plaintiffs.

Carlos Bobonis González, Bobonis, Bobonis & Rodriguez Poventud, San Juan, P.R., for defendants.

## MEMORANDUM OPINION AND ORDER

FUSTE, District Judge.

Before us is defendants' motion for a stay of trial or to compel arbitration. 9 U.S.C. secs. 1, 2, 3. Federal jurisdiction has been asserted under 15 U.S.C. secs. 77a, 78a. *See* 28 U.S.C. sec. 1331. We resolve, first, that the parties intended by written agreements to arbitrate any dispute arising from the sale of securities described in the complaint. Second, Paine Webber, Inc. and Milton Cofresí did not waive their right to arbitration. Third, section 10(b) of the Securities Exchange Act of 1934, Rule 10b–5 claims, and Commonwealth law claims against both defendants are arbitrable, although claims under section 12(2) of the Securities Act of 1933 are not.

## I.

On June 22, 1983, Eugenio Rodríguez Font (Rodríguez Font) and Eugenio Rodríguez Rolenson (Rolenson) brought suit against Milton Cofresi, Jr. (Cofresi), Vice President of Sales and registered representative of Paine Webber, Inc. in Puerto Rico. The complaint alleged that on June 23, 1981, Paine Webber, Inc.—acting through Cofresí—sold to plaintiffs about 500 municipal bonds issued by the Washington Public Power Supply System ("WPPSS"), bearing 6.2% coupons at a price of $285,000. These bonds served to capitalize the construction by WPPSS of nuclear power plants in the State of Washington. Prior to the sale, Cofresí had allegedly represented that WPPSS bonds were highly-rated by two investor services, and constituted a stable and conservative investment. According to the complaint, these representations were made in the face of growing opposition by the Washington State Legislature to the construction of WPPSS nuclear power plants. It is alleged that, as opposition mounted, WPPSS recommended to curtail the construction of certain projects. An investor service subsequently reduced the rating of WPPSS bonds, eventually leading to a 10% decrease in its value by June 12, 1981. The nub of the complaint is that Cofresí fraudulently misrepresented and deliberately withheld material information regarding the value of the bonds, in violation of the Securities Act of 1933, 15 U.S.C. secs. 77a, 77l(2), the Securities Exchange Act of 1934, 15 U.S.C. secs. 78a, 78j, Rule 10b–5, 17 C.F.R. sec. 240.10b–5, and Commonwealth laws. Plaintiffs request damages and a rescission of the sale plus interests and attorney's fees.

On July 6, 1983, plaintiffs amended the complaint as a matter of course by joining Paine Webber, Inc. as a defendant. As early as September 23, 1983, defendants raised in their answer the affirmative defense of arbitration. The record shows that since then, both parties have conducted discovery almost at will. On November 10, 1983, plaintiffs initiated the process by filing a notice of deposition and a request for production of documents. Defendants followed with an October 30, 1984 notice of depositions. In between, the parties informally discussed discovery matters apparently without success. For example, a U.S. Magistrate was forced to vacate pretrial conferences on at least two occasions because of discovery disputes. On January 28, 1985, the parties entered into a stipulation, this time agreeing to conclude discovery and suggesting a pretrial setting for April 30, 1985 and trial for a date shortly thereafter. Two days later, on January 30, plaintiffs filed a second amended complaint, including Ana T. Rolenson de Rodríguez (Rolenson de Rodríguez) as an additional plaintiff.[1] Defendants again preserved the arbitration defense in their answer. The Supreme Court's decision of

---

**1.** Plaintiffs are now requesting leave to file a third amended complaint to plead a civil RICO claim, 18 U.S.C. sec. 1962. *See* Docket Document No. 104. Such motion pends and defendants oppose the same on grounds of prejudice. Docket Document No. 112.

March 4, 1985 in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), is relevant to the arbitration defense. That case held that, when arbitrable state-law claims are mixed with non-arbitrable federal securities claims, a court has no discretion but to grant a motion to compel arbitration. *Id.*, 105 S.Ct. at 1240. Following *Byrd*, defendants persevered in their efforts to pursue arbitration in a letter sent to plaintiffs on May 15, 1985. In spite of *Byrd*, plaintiffs refused to arbitrate claiming "[i]t is absurd, and at this stage of the game is nothing more than a dilatory tactic." Almost two years since the filing of the complaint, but only two months after the *Byrd* decision, defendants filed a motion to compel arbitration on June 8, 1985.

We turn to the substance of the arbitration petition. The record reveals that on May 18, 1982, Rolenson signed a "Client's Agreement" with Paine Webber, Inc. Defendants' Exhibit 2, Arbitration Petition. On December 21, 1981, Rodriguez Font entered into an identical "Client's Agreement" with said defendant. *Id.* Exh. 1. Whether the parties intended to arbitrate their disputes arising from the sale of securities dating back to 1981 is critical to this case. Plaintiffs forcefully assert that such agreements cannot apply retroactively. Defendants respond that, reading the agreements as a whole and resolving any doubts in favor of arbitration, the parties intended to arbitrate any dispute concerning the management of plaintiffs' accounts.

The introductory paragraph of each agreement, and clauses 13 and 15, provide:

In consideration of your opening now or in the future or *continuing an account or accounts* in my name or for me for the purchase or sale of property I agree with you and any successor corporations or firms as follows, *all my relations and dealings with you subject to this agreement:*

. . . .

13. *All transactions heretofore made or entered on my account or accounts shall be treated as though made under and governed by the terms of this agreement.* This agreement and its enforcement shall be construed and governed by the law of the State of New York.

. . . .

15. Any controversy between us arising out of or *relating to this contract* or the breach thereof, *shall be settled by arbitration,* in accordance with the rules, then obtaining, of either the Arbitration Committee of The New York Stock Exchange, American Stock Exchange, National Association of Securities Dealers or *where appropriate,* Chicago Board Option Exchange or Commodities Future Trading Commission. . . . (Emphasis added)

While the petition for arbitration was still pending, plaintiffs filed motions to compel discovery, to order pretrial setting, and opposing stay of trial pending arbitration. On July 22, 1985, defendants moved for summary judgment on grounds that, 1) the claims for negligence and breach of fiduciary duties do not comply with Fed.R. Civ.P. 8(a)(2), 2) there is no cognizable claim under sections 10(b), 12(2), and Rule 10(b)–5, 3) such claims are, in any event, time-barred, and 4) the court lacks jurisdiction over Rolenson de Rodríguez' claims. Believing defendants to have been responsible for delays in discovery, a U.S. Magistrate imposed monetary sanctions on defendants and struck the motion for summary judgment from the record.[2] Thereafter, the magistrate vacated pretrial conferences

---

2. This order has been appealed to this court by defendants. We note that, in any event, some of the issues there presented are now moot. For example, our ruling of today remands to arbitration the claims for negligence and breach of fiduciary duties under local law. By the same token, the purported claim under Rule 10b–5 has also been remanded to arbitration. The argument made on the section 12(2) claim has been passed upon, in the sense that we are now ordering a trial on said issue. There only remains to decide whether there is jurisdiction to entertain Rolenson de Rodríguez' claim. Without prejudging the matter, we leave this issue to be decided at trial. With this caveat, the sanctions imposed by the magistrate are hereby affirmed.

of September 4, 1985 and October 8, 1985, with plaintiffs later filing a motion for sanctions. The motion to compel arbitration, however, remained enmeshed awaiting judicial resolution among this mass of convoluted procedural filings by the parties.[3]

## II.

█ The purchase and sale of WPPSS bonds represents a "transaction involving commerce." 9 U.S.C. sec. 1; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n. 7, 87 S.Ct. 1801, 1805 n. 7, 18 L.Ed.2d 1270 (1967). The dispute on the merits is whether defendants fraudulently misrepresented and withheld material information from plaintiffs-prospective buyers. This controversy arises from the "transaction involving commerce." 9 U.S.C. sec. 1. Accordingly, an agreement to arbitrate such a dispute is judicially enforceable under the Federal Arbitration Act unless the right to arbitration has been waived. *Carmona Tirado v. Shearson Lehman American Express, Inc.*, 634 F.Supp. 158, 159 (D.P.R.1986).[4]

█ The intention of the parties determines whether they have agreed to arbitration. *See Ahn v. Rooney, Pace, Inc.*, 624 F.Supp. 368, 369 (S.D.N.Y.1985). This is a threshold question of federal law. *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1211–12 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972). A court must give due respect to the liberal policy favoring arbitration whenever reasonable doubts surround the parties' intentions. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, ——, 105 S.Ct. 3346, 3354–55, 87 L.Ed.2d 444 (1985).

█ Clause 13 of each agreement confirms the parties' intentions to treat all transactions, whether past or present, as "though made under and governed by the terms of this agreement." The considera-

tion for "continuing an account or accounts" with Paine Webber, Inc. was for the purchasers to subject to the agreements "all [their] relations and dealings with [Paine Webber, Inc.]." *See* Introductory clause, *supra*. Unequivocally, the present dispute "related to" (Cl. 15) Paine Webber's "continuing an account or accounts ... for the purchase and sale ..." (Intr. cl.) of the WPPSS bonds. Thus, the dispute "relates to" the client agreements and "shall be settled by arbitration." Cl. 15, *supra*.

█ Citing no authority for support, plaintiffs contend that the agreements lack valuable consideration. We assume that clause 13 compels this court to construe the agreement according to New York law. We further assume that applying New York law to this case would not offend the liberal, federal policy favoring commercial arbitration. In *Hamer v. Sidway*, 127 N.Y. 538, 27 N.E. 256 (N.Y.1891), the Court of Appeals of New York defined consideration as:

> '[S]ome right, interest, profit or benefit accruing to the one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other.'
>
> . . . .
>
> 'It is enough that something is promised, done, forborne or suffered by the party to whom the promise is made as consideration for the promise made to him.'
>
> . . . .
>
> 'In general, a waiver of any legal right at the request of another party is sufficient consideration....'

In light of these principles, plaintiffs overlook that the *quid pro quo* for continuing to do business with Paine Webber, Inc. is precisely to agree to arbitrate any dispute that relates to the purchase and sale of securities. Plaintiffs *ab initio* had a

---

3. This case was transferred to the undersigned on November 13, 1985.

4. Plaintiffs have not contested the arbitration clauses in the client's agreements as being procured by fraud. *Prima Paint Corp.*, 388 U.S. at 403–04, 87 S.Ct. at 1805–06.

legal right to seek judicial review of their state and federal securities claims. But in agreeing to continue their accounts with defendants, they voluntarily and expressly waived the right to judicial recourse in favor of arbitration. We find there is valuable consideration as defined in *Hamer v. Sidway, supra.* We hold that, in written arbitration agreements of December 21, 1981 and May 18, 1982, the parties intended to arbitrate any dispute arising from the sale of securities that took place in June 1981. *Cf. Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1028 (11th Cir.1982) (interpreting the clause: "any controversy between us arising out of your business" to require arbitration of acts which occurred *prior* to the execution of the agreement).

■ Plaintiffs attempt to circumvent arbitration by arguing that, 1) the claims against Cofresi are not arbitrable because he is not a party to either agreement, and 2) for the same reason, Rolenson de Rodríguez' claims are not subject to arbitration. We disagree on both counts. All of Paine Webber's allegedly wrongful acts are a product of the handling by Cofresí of plaintiffs' accounts. We conclude that plaintiffs' dispute with Cofresi is subject to arbitration. *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185, 1187 (9th Cir.1986). In *Hilti, Inc. v. Oldach,* 392 F.2d 368, 369 n. 2 (1st Cir.1968), the First Circuit, in condemning an effort to bypass this dispute-resolution procedure, concluded:

> If arbitration defenses could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised.

■ In our view, the same reasoning applies to Rolenson de Rodríguez' claims. The second amended complaint differs from the first by adding a sixth cause of action on behalf of Rolenson de Rodríguez, Rodríguez Font's wife. In that count, Rolenson de Rodríguez incorporated by reference the allegations in paragraphs 1–35 of the second amended complaint. These alle-

gations are essentially the same as those made by Rodríguez Font and Rolenson in the first amended complaint. *A fortiori,* if Rodríguez Font and Rolenson's claims are arbitrable, so too, are Rolenson de Rodríguez'. Otherwise, "the utility of such agreements would be seriously compromised." *Id.*

### III.

■ The next step is whether section 10(b), 15 U.S.C. sec. 78j, and Rule 10b–5 claims, 17 C.F.R. sec. 240.10b–5, are arbitrable. We again find in the affirmative. Notwithstanding considerable authority to the contrary, this court reaffirms its previous holding of arbitrability in *Cardona Tirado,* 634 F.Supp. at 161. *Accord, e.g., L.L. Phillips & L.L. Phillips Charities, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 795 F.2d 1393 (8th Cir.1986); *contra, e.g., McMahon v. Shearson/American Exp., Inc.,* 788 F.2d 94 (2d Cir.), *cert. granted,* — U.S. —, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986); *Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 797 F.2d 1197 (3rd Cir.1986); *Mayaja, Inc. S.A. v. Bodkin,* 803 F.2d 157 (5th Cir.1986); *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185 (9th Cir.1986); *Wolfe v. E.F. Hutton & Co., Inc.,* 800 F.2d 1032 (11th Cir.1986).

### IV.

Plaintiffs contend next that defendants have waived the right to arbitration. The argument is that defendants' active participation in discovery, the joint filing of the stipulation, and their motion for summary judgment, constitute inconsistent conduct amounting to waiver.

■ Waiver is not easily presumed in light of the strong federal policy favoring arbitration. *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985). As noted before, defendants have served notice of the arbitration defense on two occasions. "Given this, the burden is heavy on one who would prove waiver." *Hilti, Inc.,* 392 F.2d at 371. Mere delay in filing the peti-

tion to compel arbitration, or active participation in discovery, cannot alone justify a finding of waiver. *Rush,* 779 F.2d at 887, 888; *Hilti, Inc.,* 392 F.2d at 372 n. 9. The dispositive factor remains the absence or presence of prejudice to plaintiffs in this case. *E.g., J & S Construction Co., Inc. v. Travelers Indemnity Co.,* 520 F.2d 809, 810 (1st Cir.1975); *Dickstein v. duPont,* 443 F.2d 783, 785 (1st Cir.1971); *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968).

On the facts before us, we find no evidence of inconsistent action strong enough or so prejudicial to warrant a finding of waiver. The two-year delay in seeking arbitration does not by itself warrant such a conclusion. *See Hilti, Inc.,* 392 F.2d at 372 (no waiver; two-year delay). Defendants explained in their briefs that the filing was tardy because "... until the Supreme Court decided the *Byrd* case, the intertwining doctrine was still in the picture as a formidable obstacle to arbitration." *Rush,* 779 F.2d at 890.

Neither can we conclude that the filing of the summary judgment motion caused any prejudice to plaintiffs. This motion was not frivolous. Defendants sought summary judgment not only on arbitrable Commonwealth-law claims, but also on section 12(2) and section 10(b) claims, the latter of which could be perceived as being non-arbitrable. Regarding the contention that discovery was too burdensome, no waiver of the right to arbitration can occur from conducting discovery on non-arbitrable claims. *Rush,* 779 F.2d at 889, *quoting, Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 642 (7th Cir. 1981). As in *Rush,* plaintiffs have *not* shown if any specific discovery was conducted as to the *arbitrable* claims. Thus, it is impossible for them to prove that "prejudice in the arbitration would result from that discovery." *Id.* at 889.

Further, the filing of an affirmative defense is not to be taken lightly. A timely defense serves notice on plaintiffs, eliminates the element of surprise from litigation, and allows the opposing party an opportunity to argue against it. *See* Fed.R. Civ.P. 8(c); 5 C. Wright & A. Miller, *Federal Practice and Procedure,* secs. 1271, 1278 at 1315, 1344 (1969). The First Circuit's reasoning in *Hilti, Inc.,* 392 F.2d at 372, is persuasive here.

> The expeditious way to have disposed of the arbitration issue would have been for plaintiff to move to strike the special defense of arbitration from the answer. This not having been done, a certain amount of continued jousting was inevitable.

Moreover, *Caribbean Ins. Services, Inc. v. American Bankers Life Assur. Co.,* 715 F.2d 17 (1st Cir.1983), on which plaintiffs heavily rely, is distinguishable from this case. *Caribbean Ins. Services, Inc.* involved the termination by American Bankers of a distribution agreement with Caribbean. On June 22, 1982, Caribbean brought suit in federal court alleging that the termination violated Law 75, 10 L.P. R.A. secs. 278–278d (1964). On November 22, 1982, the parties stipulated to accelerate the trial on the merits. One and one-half years later, defendant filed a motion to compel arbitration, which the district court denied. The First Circuit affirmed, holding that the stipulation waived the right to arbitration. Contrary to this case, American Bankers failed to preserve the arbitration defense in the answer, and its failure to abide by the stipulation was highly prejudicial to Caribbean.

The facts which led the Court of Appeals to find prejudice are as follows. In August 1982, American Bankers admitted in writing to liability in the case. Accordingly, the district court ordered defendant to pay certain commissions to plaintiff. American Bankers, subject to sanctions, refused to comply and moved for reconsideration. Caribbean objected, claiming the latest motion was a delaying tactic. To end the matter, Caribbean agreed to drop the request for provisional remedies in addition to the immediate payment of commissions, if American Bankers agreed to a speedy trial within three or four months. The

parties then entered into the referred stipulation.

The Court of Appeals noted that American Bankers was reprieved from a "likely contempt finding" for refusing to comply with the district court's order and from having to pay the commissions, in consideration for American Bankers' promise to proceed quickly to trial. The First Circuit held:

> The stipulation was entirely inconsistent with American Bankers' subsequent and sudden assertion of a right to arbitration in lieu of trial.
>
> . . . .
>
> Caribbean's surrender [of the additional provisional remedies], with *prejudice*, constitutes adequate consideration under traditional contract principles to bind American Bankers to its agreement to proceed to trial.

*Id.* at 20 (emphasis added).

In our case, defendants' assertion of arbitration is more like the one in *Hilti, Inc. v. Oldach*, 392 F.2d 368 (1st Cir.1968), where plaintiffs were promptly notified of the affirmative defense before the filing of the arbitration petition. Most important, the kind of prejudice which the surrender of judicial claims entails is noticeably absent in the stipulation entered in this case. Therefore, we find no waiver.

## V.

### Remedies

Defendants' motion to compel or to stay these proceedings pending arbitration of section 10(b), Rule 10b-5, and pendent Commonwealth-law claims is GRANTED. The parties shall proceed to arbitration despite the continuation of litigation in this forum of the non-arbitrable section 12(2) claims.

Realizing that the parties have not *expressly* agreed to an arbitration locale, the same shall be Puerto Rico, where the arbitration petition was filed. 9 U.S.C. sec. 4.

5. *See* motion for leave to file third amended complaint, Docket Document Nos. 104, 112. The pending matter will be decided on or before

*Cardona Tirado*, 634 F.Supp. at 161–62. Pending matters stand SUBMITTED.[5]

## VI.

### Future Course of Action

The court will not allow this case to be steered by counsel without strict supervision. We intend to bring this case to conclusion before March 31, 1987. A scheduling/settlement conference pursuant to Fed. R.Civ.P. 16(b) shall be held on December 11, 1986, at 5:00 P.M. On said occasion, we will schedule a timetable to dispose of those issues referred to arbitration and to dispose of the section 12(2) claim by trial or otherwise. The parties shall appear prepared to discuss settlement on the date and time aforementioned.

IT IS SO ORDERED.

the scheduling/settlement conference to be set by the court.