**MEDIKA INTERNATIONAL, INC., Plaintiff,**

v.

**SCANLAN INTERNATIONAL, INC., Defendant.**

**Civ. No. 92–2083 GG.**

United States District Court, D. Puerto Rico.

Aug. 12, 1993.

Shapiro & Lugo, Anibal Lugo–Medina, Hato Rey, PR, for plaintiff.

McConnell Valdes, Jaime E. Toro Monserrate, San Juan, PR, for defendant.

## OPINION AND ORDER

GIERBOLINI, Chief Judge.

### I. *Introduction and Facts*

This case involves claims of unfair competition, violation of the Puerto Rico Dealers' Act, breach of contract, unjust enrichment, and defamation. In 1992, plaintiff and defendant executed a non-exclusive Distribution Agreement (hereafter "Agreement") whereby plaintiff would act as the distributor in Puerto Rico of defendant's surgical and medical related products. The Agreement includes a provision, requiring arbitration of all controversies arising from or relating to the Agreement. It also contains forum selection and choice-of-law clauses which state that arbitration will take place in St. Paul, Minnesota with the substantive laws of the State of Minnesota applying. The choice-of-law provision states that the Agreement will be deemed to have been executed and entered into in the State of Minnesota.

Plaintiff filed a Motion to Enjoin Arbitration, which asks the court to declare the arbitration, forum selection, and choice-of-law provisions invalid. If we hold arbitration to be valid, the plaintiff requests that we order it to take place in Puerto Rico with Puerto Rico law controlling. Defendant has filed a Motion to Dismiss in Favor of Arbitration.

Plaintiff also filed a Motion for a Preliminary and Permanent Injunction, requesting that we enjoin "Scanlan and all other persons working in concert with them from in any way importing, distributing, or selling Scan-

lan's surgical instruments and related products in Puerto Rico." In the alternative, the plaintiff has asked the court to grant it injunctive relief under the Puerto Rico Dealer's Act. Although the plaintiff incorrectly filed its motion to enjoin arbitration—it is on the same document as its memorandum of law in support of its motion for preliminary injunction—we will consider all the aforementioned motions in this opinion and order.

## II. *Arbitration*

### A. Validity of Arbitration Provision

██ Under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., a written agreement to arbitrate a dispute arising out of a "transaction involving commerce" is judicially enforceable. 9 U.S.C. § 2. "Commerce" in this context is to be broadly construed. *Societe Generale de Surveillance, S.A. v. Raytheon European Management & Systems Co.*, 643 F.2d 863, 867 (1st Cir.1981). We look to a contract to determine if it contains an arbitration clause. If such a clause exists, we determine whether the dispute arising under the contract falls within the scope of the arbitration clause. *Cardona Tirado v. Shearson Lehman American Express, Inc.*, 634 F.Supp. 158, 159 (D.P.R.1986). If an arbitration clause exists and the controversy falls under the scope of the clause, then we will direct the parties to proceed to arbitration on the issues as to which the arbitration agreement was signed unless a ground for the revocation of the contractual agreement exists. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S.Ct. 1238, 1241 (1985).

██ It is clear from the facts of this case and we so find that the termination of the dealership contract in this case involves a transaction in interstate commerce. We also find that the contract between the parties contains a valid arbitration clause, freely negotiated between and expressing the intentions of the parties. The plaintiff has not asserted fraud, duress or overreaching in the making of the arbitration agreement. Instead, the plaintiff bases its opposition to arbitration on the ground that the arbitration clause should be considered null and void as violating Puerto Rico public policy as embodied in § 278b–2 of the Puerto Rico Dealers' Act, 10 L.P.R.A. § 278 et seq.

This argument is groundless. The Federal Arbitration Act preempts the Puerto Rico Dealers' Act to the extent that it negates, as against public policy, arbitration clauses which provide for arbitration of controversies outside of Puerto Rico, or under foreign law or rule of law. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 723 F.2d 155, 158 (1st Cir.1983); *Protane Gas Co. v. Sony Consumer Products Co.*, 613 F.Supp. 215, 217 (D.P.R.1985) (granting defendant's motion for stay of proceedings and compelling arbitration despite plaintiff's assertion that arbitration clause requiring resolution of controversies by arbitration in New York City violated Puerto Rico public policy under 10 L.P.R.A. § 278b–2). While protecting dealerships may be a justifiable state concern, it does not override the federal policy supporting agreements to arbitrate.

In a similar case, *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984), the Supreme Court held that the California Franchise Investment Law which required a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration violated the Federal Arbitration Act and the Supremacy Clause. The Court stated the following about the California law meant to provide special protection to franchisees:

> JUSTICE STEVENS dissents in part on the ground that § 2 of the Arbitration Act permits a party to nullify an agreement to arbitrate on "such grounds as exist at law or in equity for the revocation of any contract." ... We conclude, however, that the defense to arbitration found in the California Franchise Investment Law is not a ground that exists at law or in equity "for the revocation of *any* contract" but merely a ground that exists for the revocation of arbitration provisions in contracts subject to the California Franchise Investment Law.

*Southland Corp. v. Keating*, 465 U.S. at 16–17 n. 11, 104 S.Ct. at 861 n. 11 (emphasis in the original). This statement is as true of the Puerto Rico Dealers' Act as it is of the California law in question in that case. The

Puerto Rico Dealers' Act isolates dealership contracts and specifies that arbitration will not be permitted in that context. It is not a ground that exists at law or in equity for the revocation of any contract. Therefore, it is not a defense to arbitration. *Mitsubishi*, 723 F.2d at 158. Although the Supreme Court of Puerto Rico, in *Walborg Corp. v. Tribunal Superior*, 104 D.P.R. 184 (P.R.1975), previously held arbitration clauses to be invalid in dealership contracts, it has indicated that, to the extent that its holding prohibits arbitration clauses in dealership contracts and conflicts with the Federal Arbitration Act, *Walborg* is expressly overruled. *World Films, Inc. v. Paramount Picture Corp.*, 90 J.T.S. 17 (1990).

### B. Scope

■ If the arbitration clause covers the dispute, we will enter an order to arbitrate and stay the proceedings before this court or dismiss the complaint without prejudice. See *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 29, 103 S.Ct. 927, 944, 74 L.Ed.2d 765 (1982) (upholding Court of Appeals remand to District Court instructing it to enter an order to arbitrate); *Protane Gas*, 613 F.Supp. at 219 (staying proceedings); *Sea–Land Service, Inc. v. Sea–Land of Puerto Rico, Inc.*, 636 F.Supp. 750, 758 (D.P.R.1986) (dismissing without prejudice); *McCain Foods Ltd. v. Puerto Rico Supplies, Inc.*, 766 F.Supp. 58, 61 (D.P.R. 1991) (dismissing without prejudice). In determining whether the scope of the arbitration clause covers the dispute in question, we will not enter into the merits of the allegations. *Warren Bros. Co. v. Cardi Corp.*, 471 F.2d 1304, 1307 (1st Cir.1973); *Peerless Pressed Metal Corp. v. International Union of Electrical, etc.*, 451 F.2d 19, 20 (1st Cir. 1971).

■ We will resolve all doubts in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960); *Mitsubishi Motors*, 723 F.2d at 159. Under the arbitration clause under consideration:

All disputes, differences, or questions arising out of or relating to this Agreement, or the validity, interpretation, breach, or violation or termination thereof, shall be finally and solely determined and settled by arbitration in St. Paul, Minnesota, U.S.A. in accordance with the rules of the American Arbitration Association. Said arbitration shall be conducted by a panel of three arbitrators and all proceedings shall be conducted in the English language. Judgment upon any arbitration award may be entered and enforced in any court of competent jurisdiction.

The First Circuit has interpreted broad language of this nature as covering contract-generated as well as contract-related disputes between the parties. That is, it has rejected the labeling of controversies arising out of or relating to the contract so as to exclude them from the scope of arbitration. *Acevedo Maldonado v. PPG Indus. Inc.*, 514 F.2d 614, 616–17 (1st Cir.1975); *Sea–Land Service*, 636 F.Supp. at 755 (party may not avoid arbitration by splitting its action as one based on contract and one based on tort and then claim arbitration was not applicable to the tort portion of the claim); *Protane Gas*, 613 F.Supp. at 217.

Plaintiff's causes of action all arise from the termination of its non-exclusive distribution agreement with the defendant. Therefore all the causes of action fall within the scope of the arbitration agreement. We will not allow the plaintiff to split his action between contract and tort claims so as to frustrate the arbitration agreement. As in *Sea–Land*, the tort damages plaintiff alleges may be incidental consequences of defendant's decision to terminate the distribution agreement. That decision and its consequences will be examined in the arbitration proceedings.

### III. *Forum–Selection Clause*

■ In addition to the agreement to arbitrate itself, the plaintiff challenges that part of the arbitration provision which specifies the place of arbitration and the contractual provision indicating that the substantive laws of Minnesota will apply to the Agreement's

operation and enforcement. The arbitration clause expressly states that arbitration will take place in St. Paul, Minnesota.

As the Supreme Court stated in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974), "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk* upheld an arbitration agreement which specified that arbitration would take place in Paris, France "in accordance with the rules then obtaining of the International Chamber of Commerce." *Id.*, at 509 n. 1, 94 S.Ct. at 2452 n. 1. In like manner, we uphold the arbitration clause in this case which specifies that arbitration will take place in St. Paul, Minnesota, in accordance with the rules of the American Arbitration Association.

■ Although the Supreme Court case *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 15, 18, 92 S.Ct. 1907, 1914, 1916, 1917, 32 L.Ed.2d 513 (1972) is an admiralty case, we find that its presumption in favor of forum-selection clauses is especially relevant in the diversity context when the Federal Arbitration Act preempts state contract law. As the Supreme Court states in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985), "The *Bremen* and *Scherk* establish a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions.... [t]hat presumption is reinforced by the emphatic federal policy in favor of arbitral dispute resolution." Because we are concerned here with the preemptive character of the Federal Arbitration Act, we will not delve into Puerto Rico state law as it pertains to the enforcement of forum-selection clauses. But it is interesting to note that Puerto Rico law has developed a presumption of the enforceability of forum-selection clauses based on federal law. *Unisys Puerto Rico, Inc. v. Ramallo Brothers Printing, Inc.*, 91 J.T.S. 69, 8855–56 (1991).

■ To defeat a forum-selection provision, a plaintiff must show that the provision resulted from unequal bargaining power, duress, or fraud; that the clause is unreasonable and unjust; or that "proceedings 'in the contractual forum will be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court'." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632–33, 105 S.Ct. 3346, 3357, 87 L.Ed.2d 444 (1985), citing *Bremen*, 407 U.S. at 1, 12, 15, 18, 92 S.Ct. at 1907, 1914, 1916, 1917; see also *Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 52–53 (1st Cir.1990) (forum-selection clause calling for resolution of disputes in Brazil was freely negotiated by the parties and thus would be given effect). Plaintiff's argument that we must consider the appropriateness of the forum under the doctrine of *forum non conveniens* is not convincing. In *Bremen*, the Supreme Court decided that, in the admiralty context, the normal *forum non conveniens* doctrine is not determinative when a contract contains a forum-selection clause. *Bremen*, 407 U.S. at 6–9, 92 S.Ct. at 1911–1913. Instead, it set forth the standard described above for determining the enforceability of such a clause. Because this case concerns arbitration, not a motion to transfer under 28 U.S.C. Section 1404(a), we find that this case is more akin to *Bremen* than to cases heard in diversity in which state contract law has not been preempted in part by the Federal Arbitration Act. See *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 36–37, 108 S.Ct. 2239, 2247, 101 L.Ed.2d 22 (1988) (Scalia, J. dissenting) (compares 28 U.S.C. § 1404(a) and the Federal Arbitration Act in the context of preemption of state contract law in the "field of agreement regarding forum selection"). Therefore, we will not conduct an inquiry into the issue of *forum non conveniens*.

■ As in *Mitsubishi*, the plaintiff in this case did not attempt to show that the forum-selection clause was unfair, unreasonable, the product of overreaching or fraud, or that the forum would be inconvenient, so that "there is no basis for assuming the forum inadequate or its selection unfair." *Mitsubishi*, 473 U.S. at 633, 105 S.Ct. at 3357. Therefore, where the parties have expressly agreed to arbitrate in a particular place, and the plaintiff fails to make the proper showing against the agreement, we will not circum-

vent the clear intent of the parties. Compare *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (where respondent did not claim lack of notice of the forum clause and where respondent did not satisfy heavy burden of proof required to set aside the clause on grounds of inconvenience, Court of Appeals erred in refusing to enforce forum-selection clause in a routine cruise line passage contract even when the clause was not freely negotiated). To do so would circumvent the public policy underlying the Federal Arbitration Act. We therefore will not disturb the parties' agreement. We uphold the forum-selection clause specifying that arbitration will take place in St. Paul, Minnesota. Compare *Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 529 (1st Cir.1985) (contract provision which unambiguously called for arbitration to be held in Portland, Maine upheld where no evidence suggested that the provision was unfair or unreasonable); *Hilti, Inc. v. Oldach*, 392 F.2d 368 (1st Cir.1968) (District Court in Puerto Rico could stay its proceedings pending arbitration in Connecticut that was pursuant to the parties' agreement); *McCain Foods*, 766 F.Supp. at 60 (D.P.R.1991) (forum-selection provision specifying Toronto as place of arbitration upheld); *Cardona Tirado*, 634 F.Supp. at 161 (court ordered arbitration in Puerto Rico because the agreement failed to specify the place for arbitration).

## IV. *Choice-of-Law Clause*

██ The plaintiff argues that the Puerto Rico Dealers' Act, in addition to prohibiting arbitration in this case, also invalidates contractual choice-of-law provisions as a violation of Puerto Rico public policy. The choice-of-law clause in this case reads as follows:

> This Agreement shall be deemed to have been executed and entered into in the State of Minnesota, U.S.A. and this Agreement, and its formation, operation and performance, shall be governed, construed, performed and enforced in accordance with the substantive laws of the State of Minnesota, U.S.A.

In *Pan American Computer Corp. v. Data General Corp.*, 467 F.Supp. 969 (D.P.R.1979), this District Court held that choice-of-law clauses which place dealers' contracts outside the reach of the Puerto Rico Dealers' Act are invalid. That case relied on the Puerto Rico case of *Walborg Corp. v. Tribunal Superior*, 104 D.P.R. 184 (P.R.1975), which invalidated both an arbitration clause and a choice-of-law provision. But as the Puerto Rico cases *Unysis* and *World Films* indicate, the viability of *Walborg* is seriously in question. *Walborg*, after all, was based to a large extent on the notion that the Federal Arbitration Act did not apply to state courts, a notion discredited by *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. at 941, which expressly stated that the substantive law the Federal Arbitration Act created was applicable both in state and federal courts. See *Walborg*, 104 D.P.R. at 190–91.

But we will not delve further into the issue of choice-of-law clauses because we find that the Agreement in this case contains a valid arbitration clause the making and performance of which does not involve fraud. In this context, that is the limited inquiry required by federal law. See *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). In *Mitsubishi*, 473 U.S. at 637 n. 19, 105 S.Ct. at 3359 n. 19, the Sales Agreement contained a choice-of-law clause specifying that the laws of the Swiss Confederation would govern it. Although the possibility was raised that the choice-of-law provision could wholly displace American law, the Court stated that it had "no occasion to speculate on this matter at this stage in the proceedings, when Mitsubishi seeks to enforce the agreement to arbitrate, not to enforce an award." Similarly, in this case we address the issue of the enforceability of an arbitration agreement, not an arbitration award. In addition, here the possibility that American law will be displaced does not exist. Having found the arbitration agreement valid, we refer all issues arising from the Distribution Agreement, including the choice-of-law issue, to the arbitrator. See *Protane Gas*, 613 F.Supp. at 218–19. Finally, granting plaintiff's request that we invalid the choice-of-law clause in this context would cir-

cumvent the public policy underlying the Federal Arbitration Act: ensuring judicial enforcement of privately made agreements to arbitrate contractual disputes in terms of the contract itself. *Dean Witter Reynolds,* 470 U.S. at 219, 105 S.Ct. at 1242.

## V. *Injunctive Relief*

### A. Injunctive Relief Under the Puerto Rico Dealers' Act

■ The plaintiff has requested that we grant injunctive relief under the Puerto Rico Dealers' Act or a preliminary and permanent injunction under federal law. Ordinarily, we would not be foreclosed from providing the plaintiff a provisional remedy under the Puerto Rico Dealer's Act, which does not require a showing of irreparable injury or likelihood of success on the merits. See *De Moss v. Kelly Services, Inc.,* 493 F.2d 1012, 1015 (1st Cir.1974). But because we refer the choice-of-law issue to the arbitrator, we will not grant a injunctive relief provided by Puerto Rican law. We find that the availability of such injunctive relief should be determined by the arbitrator.

This case differs from those we have found addressing the issue of injunctive relief under the Puerto Rico Dealers' Act. None of the cases we have found involve compulsory arbitration under a dealership agreement which contains a choice-of-law clause specifying that enforcement of the agreement would take place under laws other than those of the Commonwealth of Puerto Rico. See *Id.; Luis Rosario, Inc. v. Amana Refrigeration, Inc.,* 733 F.2d 172, 173 (1st Cir.1984); *Pan American Computer Corp. v. Data General Corp.,* 652 F.2d 215, 217 (1st Cir.1981). In *Luis Rosario,* for example, the First Circuit affirmed the District Court's denial of an injunction under 10 L.P.R.A. § 278b–1. The First Circuit found that the District Court had properly considered the interests of the parties and the public policy underlying the Puerto Rico Dealer's Act, as required by 10 L.P.R.A. § 278b–1. But that case did not involve a motion to compel arbitration; nor did it involve a choice-of-law clause. In fact, that case was clearly governed by Puerto Rico law; the First Circuit noted that the plaintiff would have an opportunity to pres-

ent evidence and to argue the absence of "just cause" under the Puerto Rico Dealer's Act at trial. In addition, in *Pan American,* the First Circuit affirmed the District Court's dissolution of an injunction pendente lite granted under 10 L.P.R.A. § 278b–1. The District Court had found that the weight of the parties' interests and the statutory policies no longer justified the injunction. But in that case as well, a motion to compel arbitration and a choice-of-law clause were not at issue.

In this case, the plaintiff agreed that controversies concerning the Dealership Agreement would be addressed through arbitration and that Minnesota law would control. To the extent that the issue of injunctive relief under Puerto Rico law conflicts with the choice-of-law provision in the Dealership Agreement, we find that it is an issue arising or related to the contract and should be resolved by the arbitrator.

### B. Preliminary Injunctive Relief under Federal Law

■ Because we find that this case falls under the Federal Arbitration Act, we will also consider plaintiff's request for a preliminary injunction under federal law. The First Circuit has expressly held that the Federal Arbitration Act permits the issuance of preliminary injunctive relief in arbitrable disputes provided the prerequisites for injunctive relief are satisfied. *Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43, 51 (1st Cir.1986) (refusing to follow *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286 (8th Cir.1984), which held that issuing a preliminary injunction was precluded by § 3 of the Arbitration Act when a dispute is arbitrable). In this Circuit, before granting a preliminary injunction a district court must find "(1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction." *Id.,* 797 F.2d at 51–52, citing *Planned Par-*

*enthood League v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981).

Plaintiff claims that it will be irreparably harmed because the public will assume that the termination of the Dealership Agreement was due to lack of performance, breach of contract, or some other reason which would harm plaintiff's goodwill and business reputation. The plaintiff will also suffer economic harm from the termination of distribution of Scanlan's products. Allegedly, Scanlan will not suffer economic hardship because the plaintiff will continue to distribute Scanlan's products in Puerto Rico. In an attempt to show a likelihood of success on the merits, the plaintiff claims that it met 80% of its sales quota for Scanlan products by May 1992, five months into the year, and that Scanlan's allegation of lateness in payments on merchandize is false.

■ Plaintiff's request for injunctive relief essentially asks us to rewrite its contract with the defendant. Under the dealership agreement, the plaintiff is a non-exclusive distributor of defendant's products. But the plaintiff asks us to enjoin "Scanlan and all other persons working in concert with them from in any way importing, distributing, or selling Scanlan's surgical instruments and related products in Puerto Rico," thereby making plaintiff an exclusive distributor. The plaintiff has not indicated any reason why we should rewrite the dealership agreement in this fashion and we refuse to do so. Compare *Luis Rosario,* 733 F.2d at 174 (denying former exclusive dealer's motion for preliminary injunctive relief which would require manufacturer to sell to dealer on non-exclusive basis because granting the preliminary injunction would impermissibly rewrite the exclusive dealership agreement).

■ To the extent that plaintiff's request for a preliminary injunction pertains solely to maintaining the status quo under the terms of its non-exclusive dealership agreement, we find that the plaintiff's allegations of injury do not meet the level of irreparable injury required to satisfy the first element of the standard for a preliminary injunction. Injuries of the type described by the plaintiff may be compensated with damages. Compare *Classic Components Supply, Inc. v.*

*Mitsubishi Electronics of America, Inc.,* 841 F.2d 163, 164–65 (7th Cir.1988) (allegations that market development for products will be lost if there is an interruption in a dealership agreement and that such an interruption will affect the entire customer base of a distributor allege common consequences of a broken contract which are compensable in money damages so that the injury is not irreparable and an injunction is therefore unavailable); *ABA Distributors, Inc. v. Adolph Coors Co.,* 661 F.2d 712 (8th Cir.1981) (the goodwill acquired over a short period is more readily compensated by money damages than is the goodwill lost by the improper deprivation of an inveterate enterprise). This case does not involve an allegation of the deprivation of an inveterate enterprise or an appeal to the exception "that a terminated supply arrangement may create irreparable injury if the interruption bids fair to propel one firm into bankruptcy and frustrate later attempts to compute or collect damages." *Classic Components,* 841 F.2d at 165. Therefore, we find that the plaintiff will not suffer irreparable injury from the denial of a preliminary injunction. Having made this finding, we will not delve into the other elements of the preliminary injunction standard.

## VI. *Conclusion*

Wherefore, we deny plaintiff's Motion to Enjoin Arbitration. In addition, we deny plaintiff's Motion to Declare Forum Selection and Choice of Law Agreement Invalid. In addition, we deny plaintiff's Motion for a Preliminary and Permanent Injunction and for injunctive relief under the Puerto Rico Dealers' Act. Finally, we grant defendant's motion requesting dismissal.

**SO ORDERED.**

### JUDGMENT

In our Opinion and Order signed on this same date, we made the following dispositions:

1) We denied plaintiff's Motion to Enjoin Arbitration;

2) We denied plaintiff's Motion to Declare Forum Selection and Choice of Law Agreement Invalid;

3) We denied plaintiff's Motion for a Preliminary and Permanent Injunction and injunctive relief under the Puerto Rico Dealers' Act, 10 L.P.R.A. § 278 et seq.; and

4) We granted defendant's Motion to Dismiss in Favor of Arbitration.

Therefore, finding that the controversies arising from the Distribution Agreement in this case should go to arbitration, we hereby enter judgment dismissing this case.

**SO ADJUDGED.**