Robertson v. NE Telephone          CV-97-314-M    12/08/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Frederick A. Robertson,
     Plaintiff

v.                                        Civil No. 97-314-M

New England Telephone
and Telegraph Company,
     Defendant


**O R D E R**

Frederick Robertson brings this action against his former employer, seeking damages for alleged violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.  He also raises three state law claims, over which he says the court should exercise supplemental jurisdiction: negligent infliction of emotional distress, intentional infliction of emotional distress, and wrongful discharge.  Defendant moves for summary judgment as to all five counts in plaintiff's complaint.  Plaintiff objects.


**Factual Background**

New England Telephone and Telegraph ("NETT") employed Robertson as an outside plant technician (or lineman) for thirty years, from February 28, 1966 through May 15, 1996.  As a union-represented employee, Robertson was subject to the terms of a collective bargaining agreement between NETT and Local 2320 of the International Brotherhood of Electrical Workers.  He was also

covered by NETT's Sickness and Accident Disability Plan (the "plan"), an ERISA-governed employee benefit plan.

During the course of his employment, Robertson sustained a number of injuries to his lumbar and cervical spine and left shoulder.[1]  Prior to 1995, NETT determined that each of Robertson's back injuries was "work-related."  Although the record is unclear as to this point, it appears that Robertson received benefits under the "accident disability" benefits provisions of the plan.  See Disposition of Case forms dated October __ (illegible), 1976; December 9, 1976; February 8, 1978; January 21, 1980; August 27, 1980; October 14, 1986; and May __ (illegible), 1992.

In 1986, Robertson sustained neck and shoulder injuries and again began receiving disability benefits under the plan.  In 1991, Robertson reinjured his neck and shoulder and, after

---

[1]  The record reflects the fact that Robertson first injured his back on August 2, 1976.  While climbing a telephone pole, he felt a sharp pain in his lower back and right leg.  He was out of work from that date through October 1, 1976.  His Employee Absence Record shows that NETT determined that his absence was due to an injury sustained in the course of his employment.  He appears to have received "accident disability" payments under the plan during the course of that disability.  On December 7, 1976, he suffered a relapse of that injury, but returned to work the following day.  He suffered additional relapses of that injury in June, 1978; January 9, 1980; August 7, 1980; and August 18, 1986.  On July 31, 1991, Robertson re-injured his back when he slipped and fell after stepping out of a company truck.  He remained out of work until May 11, 1992.  On February 1, 1995, Robertson again injured his back while stooping down to cut a telephone pole.  He did not, however, lose any time from work due to that injury.

ultimately prevailing on his workers' compensation claim against NETT in 1994, began receiving workers' compensation benefits for those injuries.

On May 8, 1995, Robertson went out on disability so that he might have arthroscopic surgery on his shoulder. However, it does not appear that Robertson had been involved in any incident or accident immediately prior to that date which prompted his need for surgery. It is equally important to note that, at that point, Robertson's inability to work was exclusively the result of his shoulder surgery; it was wholly unrelated to his back condition/injury.

NETT notified Robertson that his request for benefits under the plan had been accepted as "sickness disability." Because Robertson had been classified as eligible for "sickness disability" rather than "accident disability," he was entitled to benefits under the plan for a maximum of 52 weeks. If, instead, NETT had classified his disability as one entitling him to "accident disability" benefits, he would have been entitled to indefinite benefits. Robertson remained out of work following his shoulder surgery and, on August 2, 1995, he underwent additional surgery, this time on his neck.

In January of 1996, while Robertson was still out on "sickness disability" relating to his shoulder and neck

3

surgeries, NETT offered him and other eligible employees an "enhanced retirement package."  The offer expired on January 31, 1996.  Robertson says that, through his union representative, he asked whether acceptance of the retirement package would affect his workers' compensation benefits.  He did not receive a reply, nor did he accept the retirement package, before NETT's offer expired.  Had he accepted the enhanced retirement package in a timely manner, Robertson would have received a larger pension than the one NETT eventually awarded him.

In March of 1996, NETT notified Robertson that if he did not return to work by May 14, 1996 (52 weeks after he began his disability leave and the point at which his "sickness disability" benefits under the plan would expire), his employment would be terminated.  Robertson claims that he was, at least initially, ready and able to immediately return to light-duty employment and could have returned to full duty by May, 1996.  He says that he requested NETT to accommodate his light-duty work capacity, but the company refused.  In the end, the issue of accommodation proved to be moot.  Robertson was unable to return to work (even light duty work) by May, 1996 because he was recovering from additional surgery, this time related to his lumbar spine, which had been performed in April.

On May 9, 1996, approximately one year after first receiving notice that NETT had classified his disability as "sickness" and

4

less than a week before the date by which he was required to return to work or face termination, Robertson, through his union representative, appealed his disability classification to the NYNEX Claims Committee, a named fiduciary of the plan. Despite the fact that the plan provides that all appeals must be received within 60 days, see the plan, Section 3, para 3(b), the Claims Committee allowed Robertson to file a late appeal and considered it on the merits. Based upon the record before it, the Claims Committee concluded that Robertson's disability (which began in May, 1995) had been properly classified as "sickness," rather than "accident." Robertson appealed that decision to the NYNEX Employees' Benefits Committee, another fiduciary under the plan which, like the Claims Committee, retained discretionary authority to interpret the terms of the plan. The Benefits Committee upheld the Claims Committee's determination denying Robertson's claim that he was entitled to accident, rather than sickness, disability.

In May of 1996, when he was unable to return to work after receiving 52 weeks of sickness disability benefits, Robertson's employment was terminated. He then applied for and received a pension under NETT's pension plan. He also applied for and received social security disability benefits, arguing that he was completely disabled and unable to return to any form of employment.

5

Robertson claims that as a result of NETT's "wrongful classification of [his] neck and shoulder injuries, [NETT's] failure to acknowledge [his] lumbar spine surgery in April 1996, and the subsequent denial of his appeals on these matters, [he] was paid 'sickness disability' benefits and not 'accident disability' benefits under the defendant's self-administered, self-insured employee benefits plan." Plaintiff's memorandum (document no. 18) at 5. He also alleges that if NETT had properly classified his most recent disability status as the product of a work-related accident, his employment would have continued indefinitely and he would not have been terminated on May 15, 1996. Additionally, he says that NETT's wrongful conduct prevented him from electing to receive the enhanced retirement package.

**Discussion**

I.  Plaintiff's Federal Claims.

    A.  ERISA Violation (Count 1).

    In count 1 of his complaint, Robertson asserts that NETT acted arbitrarily and capriciously when it classified his disability as being due to "sickness" rather than "accident," under the terms of the plan. Specifically, he alleges that his back surgery in April, 1996 (one month before he was terminated) was the reason he could not return to work. And, because he says that defendant had, for nearly 20 years, determined that his back injuries were work related, it violated the terms of the plan

6

(and the governing provisions of ERISA) when it refused to recognize that the disability which prevented him from returning to work made him eligible for "accident disability benefits," rather than merely "sickness disability benefits."

1.    Standard of Review.

The plan under which Robertson seeks benefits is part of an employee welfare benefit plan regulated by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq. ("ERISA").  NETT's denial of coverage under that plan constituted denial of a welfare benefit under an ERISA regulated plan.  When a fiduciary's denial of plan benefits is challenged under 29 U.S.C. §1132(a)(1)(B), the denial "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the plan does give discretion to an administrator or fiduciary to determine eligibility for benefits, the court must employ a more deferential "abuse of discretion" standard in reviewing a denial.  Id., at 111.  Here, the parties agree that the plan vests the plan fiduciaries with discretionary authority to make eligibility determinations and, therefore, the court must apply the deferential "arbitrary and capricious" standard of review in evaluating NETT's denial of "accident disability benefits" under the plan.

7

In discussing the application of the "arbitrary and capricious" standard in the ERISA context, the Court of Appeals for the First Circuit has noted that a fiduciary's "decision will be upheld if it was within [its] authority, reasoned, and 'supported by substantial evidence in the record.' Substantial evidence, in turn, means evidence reasonably sufficient to support a conclusion." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998) (citation omitted). See also Wildbur v. Arco Chemical Co., 974 F.2d 631, 637-38 (5th Cir. 1992) (defining the contours of the "arbitrary and capricious" standard in the ERISA context and adopting a two-part test for resolving claims that an ERISA fiduciary violated that standard).

2.    Discussion.

Plainly, what is at issue in this case is whether the plan's fiduciaries properly interpreted the terms of the plan and reasonably concluded that Robertson's most recent disability (beginning in May of 1995) fell within the scope of "sickness disability," rather than "accident disability." The plan provides, in relevant part, as follows:

Section 4.  Sickness Disability Benefits.

1.    Participation.  All employees whose term of employment with the Company is six months or more, shall become participants in the Sickness Disability Benefits portions of the Plan and be qualified to receive payments under the Plan on account of physical disability to work by reason of sickness. . . . For the purposes of the Plan, sickness shall include injury other than accidental injury arising out of and in the course of employment by the Company . . ..

8

\* \* \*

Section 5.  Accident Disability Benefits

1.  Participation.  All employees shall be participants in the Accident Disability Benefit Plan and qualified to receive payments under the Plan on account of physical disability to work by reason of accidental injury (not including the accidental injuries specified in Paragraph 12 of Section 6) arising out of and in the course of employment by the Company . . ..

5.  Relationship of Injury to Employment.  Accidental injuries shall be considered as arising out of and in the course of employment only where the injury has resulted <u>solely from accident during and [in] direct connection with the performance of duties</u> to which the employee is assigned in the service of the Company . . . There must be a clear and well-established history of the cause and circumstances of injury accidentally inflicted, which must be sufficient to produce the alleged injury, and there must be satisfactory evidence that such injury renders the employee unable to perform his duty in the service of the Company.

The plan, Sections 4 and 5 (emphasis supplied).  It would seem, therefore, that an employee is entitled to "accident disability" benefits if his or her disability is caused solely by an accident which occurred during, and in direct connection with, his or her duties as an employee of NETT.  If, however, an employee's disability is caused by sickness, or an accident which did <u>not</u> occur in the course of performing his or her duties (e.g., an off-duty traffic accident), or even a work-related accident which was not the <u>sole</u> cause of the disability, he or she is entitled only to "sickness disability" benefits.

In support of his claim that NETT acted arbitrarily and capriciously in classifying his disability as sickness rather than accident, Robertson advances two arguments. First, he asserts that the reason he could not return to work in May of 1996 was because of the recent (April, 1996) surgical procedure on his lumbar spine. And, because NETT had previously classified his disabilities relating to his lumbar spine injury as "accident disability," he says that his most recent disability (like those which preceded it) should also have been classified as accident disability. Next, Robertson focuses on his neck and shoulder injuries. He asserts that because he received workers' compensation benefits for those injuries, they were necessarily work-related and, therefore, should have been classified under the terms of the plan as "accident disability."

Unfortunately, it is entirely unclear from the record precisely what Robertson's "appeal" asked the Claims Committee to do. It is possible that he was essentially asking the committee to make a <u>new</u> benefits eligibility determination, based not upon his May, 1995 shoulder surgery, but instead upon his more recent back surgery. However, if that was his intent, his "appeal" to the plan fiduciaries did not make that point clear. In fact, Robertson himself concedes that, "[t]he reason the two committees ignored the lumbar surgery is that they were not told about it." Plaintiff's memorandum at 6. It would, however, certainly seem that if Robertson wished either committee to make a new benefits

10

eligibility determination based upon his recent back surgery, he was obligated to notify the plan fiduciaries that he had undergone such surgery. In that way, he would have apprized the fiduciaries of his position that there was a <u>new</u> basis for his claim to "accident disability" benefits (i.e., independent of the shoulder/neck surgeries which were previously deemed to make him eligible only for "sickness disability").[2]

Alternatively, however, it is possible that Robertson's claim before the plan fiduciaries was merely an "appeal" in the more traditional sense of that word – a request that the plan fiduciaries simply review and reassess NETT's earlier determination that he was, as a result of his shoulder surgery in May, 1995, entitled only to "sickness disability" benefits.[3]

---

[2] It bears noting that NETT admits that, while Robertson did not explicitly notify it that he had undergone recent back surgery when he filed his appeal with the Claims Committee, the medical records he provided to the committee did contain numerous references to that surgery. Accordingly, this case presents a somewhat unusual situation in which the plaintiff admits that he failed to specifically raise a seemingly dispositive issue to the ERISA plan fiduciary and yet, rather than argue some sort of waiver, the defendant claims to have actually considered and weighed that issue in its final decision. Ultimately, however, the extent to which the Claims Committee (or even the Benefits Committee) actually considered whether Robertson's recent back surgery entitled him to "accident disability" benefits is entirely unclear due to the fact that neither committee provided any real detail (nor did either reference his recent back surgery) in its decision denying the appeal.

[3] It appears that this latter argument, if actually advanced, would have little merit. First, Robertson himself acknowledges that he had fully recovered from his neck and shoulder surgeries prior to May of 1996 (i.e., less than 52 weeks after his "sickness disability" began). He also concedes that, but for his subsequent back surgery, would have been ready,

11

The vagueness of Robertson's appeal and the lack of any definitive statement concerning the precise basis for his asserted entitlement to "accident disability" benefits is not the only problem confronting the court. It is equally unclear from the record precisely which of the two questions arguably raised by Robertson's appeal the plan fiduciaries actually considered and addressed. The written decisions issued by both the Claims Committee and the Benefits Committee fail to discuss what they perceived to be the substance of Robertson's claim(s) nor do they discuss in any detail the basis for their denial of Robertson's appeal.

In light of the foregoing confusion, the parties agreed (at a pretrial conference) that the most appropriate resolution at this juncture would be a remand to the Claims Committee (and, if appropriate, the Benefits Committee) for administrative redetermination. That process will allow Robertson to clearly and succinctly frame the issue(s) presented and will allow the Committee the opportunity to disclose its reasons for granting or denying Robertson's claim. At that point (if appropriate), the court will have a complete record to review under the applicable

willing, and able to return to work by that date. Consequently, it would seem that he received all the benefits to which he was entitled for those particular injuries and disabilities (regardless of whether they were labeled "sickness disability" or "accident disability"). In short, he received disability payments for his neck and shoulder injuries for the full time that they caused him to be disabled. For the purposes of this litigation, the label NETT (or the plan fiduciaries) ascribed to those benefits is irrelevant.

deferential standard.  Absent remand, the plaintiff would, in essence, be asking the court to rule de novo on his entitlement to "accident disability" benefits under the plan.  That is, quite plainly, an inappropriate role for the court to assume when the plan gives the fiduciaries discretion to interpret its terms. See Firestone Tire & Rubber Co., supra.

Accordingly, Robertson's ERISA claim that he is entitled to "accident disability" benefits under the plan) is remanded to the plan fiduciaries.  Although the court will administratively close this matter, it will retain jurisdiction over Robertson's claim, in the event that it becomes necessary for the court to review the fiduciaries' decision.  See Petralia v. AT&T Global Information Solutions Co., 114 F.3d 352, 355 (1st Cir. 1997).

B.   Robertson's ADEA Claim (Count 5).

Robertson next claims that he was discharged in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.  "Absent direct evidence of discriminatory intent, an ADEA plaintiff may present circumstantial evidence pursuant to the familiar three-stage, burden-shirting paradigm."  Shorette v. Rite Aid of Maine, 155 F.3d 8, 12 (1st Cir. 1998).  To carry that burden and establish a prima facie case of age discrimination, Robertson must demonstrate that: (1) he was at least 40 years old; (2) he met NETT's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) in deciding to

13

terminate him, NETT did not treat age neutrally. See Alvarez-Fonseca v. Pepsi Cola of Puerto Rico, 152 F.3d 17, 24 (1st Cir. 1998); Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 332 (1st Cir. 1997).

NETT contends that Robertson cannot make a prima facie showing of discrimination because, when he was terminated (and for several months preceding that date and continuing through the present), he was completely disabled and, therefore, unable to meet the legitimate performance requirements of his job. In support of that contention NETT points out that on July 24, 1996, Robertson applied for and began receiving Social Security disability benefits. In his application for those benefits, Robertson represented that he became totally and permanently disabled as of May 9, 1995, approximately one year prior to his termination. NETT represents (and Robertson does not dispute) that he has not notified the Social Security Administration of any change in his condition and, therefore, continues to receive benefits for his total disability. Additionally, nearly every month from May, 1995 through December, 1996 (i.e., prior to and following Robertson's discharge), Robertson's physician, Dr. Dennis Wachs, M.D., monitored his condition and completed New Hampshire Workers' Compensation Medical Forms on which he represented that Robertson was unable to return to work. Finally, in August of 1997, Robertson re-certified to NETT that he remained totally disabled and unable to return to work.

14

In response to the substantial body of evidence which suggests that Robertson was incapable to performing any work for NETT when he was discharged in May of 1996 (and, therefore, unable to meet NETT's legitimate performance expectations), Robertson makes only a single argument: that NETT's "own doctor, Dr. Pick, gave Mr. Robertson a light duty work capacity in November of 1995, and a return to full duty status by May 2, 1996." Plaintiff's objection at 20. Dr. Pick's optimistic prediction regarding Robertson's ability to return to light-duty status proved to be incorrect. As Robertson himself points out, he was unable to return to work in May of 1996 due to his back surgery in April, 1996, which occurred <u>after</u> Dr. Pick opined that Robertson should be able to return to work. <u>See</u> Plaintiff's memorandum at 4. <u>See also</u> Plaintiff's Deposition at 22 (testifying that due to his medical condition, he was unable to work as of May 8, 1995, and continuing through the date of his deposition, on August 21, 1998).

Other than his reference to Dr. Pick's erroneous prediction that Robertson should be able to return to work in May of 1996, Robertson has pointed to no evidence which would support his assertion that he was, at the time of his discharge, capable of meeting NETT's legitimate performance expectations. And, NETT has produced substantial evidence in support of its assertion that Robertson was, in fact, completely disabled at the time and, therefore, unable to perform any aspects of his job. This

15

includes assertions made by both Robertson and his treating physician that he was totally disabled and unable to perform the requirements of his job. Accordingly, the court is compelled to conclude that Robertson has failed to establish the essential elements of a prima facie case of age discrimination. Consequently, NETT is entitled to judgment as a matter of law as to that count in plaintiff's complaint.

II. Plaintiff's State Law Claims.

A. Negligent and Intentional Infliction of Emotional Distress (Counts 3 and 4).

In count 3 of his complaint, Robertson alleges that NETT's allegedly wrongful termination of his employment was done for the purpose of (or with reckless disregard for the likelihood of) causing him severe emotional distress. In count 4, he alleges that NETT's conduct was, at a minimum, negligent, reckless, and outrageous, proximately causing him to suffer emotional harm. NETT asserts that Robertson's claims for emotional distress (both negligent and intentional) are barred by New Hampshire's workers' compensation statute, N.H. Rev. Stat. Ann. ch. 281-A.

The New Hampshire Supreme Court has yet to address this issue (although it is currently pending before that court). This court has, however, construed New Hampshire's workers' compensation statute to prohibit suits against an employer for both intentional and non-intentional torts. See, e.g., Sweet v. Hadco, No. 95-576-M, slip op. at 4 (D.N.H. January 18, 1996).

16

"More specifically, N.H. Rev. Stat. Ann. § 281-A:8 has consistently been held to bar causes of action for intentional infliction of emotional distress brought by employees against employers." Id. (citations omitted). See also Censullo v. Brenka Video, Inc., 989 F.2d 40, 43 (1st Cir. 1993) ("Emotional distress is a personal injury, not subject to recovery in a common law action under [New Hampshire's] workmen's compensation statute."). Accordingly, Counts 3 and 4 of plaintiff's complaint must be dismissed.

Nevertheless, plaintiff suggests that the court should "hold in abeyance" any ruling on NETT's motion for summary judgment as to those claims:

> given the [unsettled] state of the law [on this issue]
> in New Hampshire [Superior Courts] and the pending case
> in the New Hampshire Supreme Court [which raises this
> issue], this Court should hold in abeyance its
> determination of whether the New Hampshire Workers'
> Compensation Statute bars Mr. Robertson from claiming
> damages under a theory of infliction of emotional
> distress until the New Hampshire Supreme Court has
> ruled on the Karen C. Karch v. Baybank case.

Plaintiff's memorandum, at 20.

That the New Hampshire Supreme Court may settle the question is not sufficient reason to "hold in abeyance" NETT's motion. The law in this court is settled. Robertson's emotional distress claims are barred by the workers' compensation statute. Should the New Hampshire Supreme Court issue a contrary ruling prior to

17

trial, Robertson may of course file whatever motion for relief he deems appropriate.

B.    Wrongful Discharge (Count 2).

NETT asserts that the terms of the Collective Bargaining Agreement (the "CBA") bar Robertson from bringing his wrongful discharge claim in this court and, instead, require him to arbitrate that claim.  In fact, it points out that Robertson actually initiated a grievance procedure under the CBA and the matter is currently scheduled for arbitration in March, 1999.  In response, Robertson asserts:

> Mr. Robertson did file a grievance but expects [NETT] to claim, and the arbitrator to rule, that it is not arbitrable. . . . Mr. Robertson has no remedy in the arbitration process because his wrongful discharge was based on retaliation by the defendant in connection with his request for benefits under the Plan.  If [NETT] truly asserts that Mr. Robertson's misclassfication under the Plan is arbitrable, it may stipulate to the same.  If the stipulation allows an arbitrator to make the Plaintiff whole, the Plaintiff will withdraw this count.

Plaintiff's memorandum, at 16.  Such a stipulation is, however, unnecessary.  NETT has judicially admitted, in its motion for summary judgment, that Robertson's claim (in the form of a breach of contract claim, rather than one for "wrongful discharge") is arbitrable.  See Defendant's motion for summary judgment, at para. 2(b).  See also Censullo, 989 F.2d at 42 (noting that, under New Hampshire law, "contract employees are limited in their remedies for breach by the terms of the contract.").

18

Because his "wrongful discharge" claim is subject to ongoing arbitration under the terms of the CBA, Count 2 of Robertson's complaint must be stayed pending resolution of that arbitration proceedings. See 9 U.S.C. § 3. Should the arbitrator determine that he or she lacks jurisdiction over Robertson's claim (e.g., because it involves a claim for benefits under an ERISA governed plan), the court may then address the merits of Robertson's wrongful discharge (or, more properly, breach of contract) claim.[4]

## Conclusion

Defendant's motion for summary judgment (document no. 12) is granted in part and denied in part. As to Robertson's ERISA claim (count 1), defendant's motion is denied. The matter is hereby remanded to the plan fiduciaries for reconsideration of Robertson's claim(s). The court will, however, retain jurisdiction over this matter, pending the fiduciaries' decision on Robertson's claim(s). As to Robertson's wrongful discharge claim (count 2), the court will stay all proceedings with regard

---

[4] Plaintiff recently filed a motion to amend his complaint in which he seeks to add a new count 6, in which he alleges that he is a contract employee who was terminated in violation of his employment contract. He has not, however, moved to withdraw his "wrongful termination" count (a claim which is normally reserved for employees at will). At this juncture, however, the court need not address Robertson's motion to amend and it is, therefore, denied as moot, with leave to refile at a later date if appropriate.

to that claim and retain jurisdiction, pending completion of the arbitration.[5]

Defendant's motion for summary judgment is, however, granted as to Robertson's claims for negligent and intentional infliction of emotional distress (counts 3 and 4), and his claim under the ADEA (count 5). The former state law claims are barred by the New Hampshire workers' compensation statute. And, with respect to his ADEA claim, the court concludes that Robertson has failed to carry his burden of establishing a prima facie case of age discrimination. Specifically, he has failed to demonstrate that, at the time of his termination, he was able to meet NETT's legitimate job-performance expectations. In fact, the record

---

[5]     Although the court has retained jurisdiction over Robertson's ERISA claim and his wrongful termination claim, it will administratively close the case, subject to plaintiff filing (if appropriate) a motion to reopen. See Petralia, 114 F.3d at 355 (recognizing that a court may administratively close a case involving claims which have been remanded to an ERISA fiduciary). See also Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (quoting Sea-Land Service, Inc. v. Sea-Land of Puerto Rico, Inc., 636 F.Supp. 750, 757 (D.P.R. 1986)) (recognizing that a court may dismiss without prejudice (or, presumably, administratively close) a case under the Federal Arbitration Act when it is properly subject to arbitration).

Should the arbitrator conclude that Robertson's claim is properly arbitrable and should Robertson be dissatisfied with the outcome, he may move to reopen this case and seek judicial review of the arbitrator's decision. Alternatively, if the arbitrator should determine that he or she lacks jurisdiction over plaintiff's claim (or that it is otherwise not properly subject to arbitration), plaintiff may move to reopen the case and present his wrongful termination claim, on the merits, in this forum. The same is obviously true with regard to his ERISA claim, once the plan fiduciaries have considered his claim(s) and rendered their decisions.

suggests (and plaintiff himself has conceded both at deposition and in papers filed in support of his application for Social Security disability benefits) that he was totally disabled on or prior to his termination and continues to be totally disabled today.

Finally, plaintiff's motion to reconsider the Magistrate Judge's denial of his motion to extend discovery and take in excess of ten depositions (document no. 21) is denied as moot. Plaintiff's motion for leave to file an amended complaint (document no. 28) is likewise denied, with leave to refile should arbitration not resolve his wrongful discharge/breach of contract claim. Plaintiff's motion for leave to file a responsive pleading (document no. 29) is granted.

In summary, defendant's motion for summary judgment is granted with regard to counts 3, 4, and 5 of plaintiff's complaint. As to count 1 (ERISA) and count 2 (wrongful discharge), plaintiff's claims will be addressed, at least initially, by the plan fiduciaries and an arbitrator, respectively. In the interim, the Clerk of the Court shall administratively close the case. If appropriate, plaintiff may seek to reopen this matter at a later date.

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

December 8, 1998

cc:  Thomas T. Barry, Esq.
     Vincent A. Wenners, Jr., Esq.
     Robert E. Jauron, Esq.